IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY K. BOLEY, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>UNIVERSAL HEALTH SERVICES, INC., et al.,<br><br>    Defendants. | Civil Action No. 2:20-cv-02644-MAK |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
FOR PARTIAL DISMISSAL OF PLAINTIFFS' SECOND AMENDED COMPLAINT**

  Universal Health Services, Inc. ("UHS") and the UHS Retirement Plans Investment Committee (the "Committee") (together, "Defendants") hereby submit their memorandum of law in support of their motion for partial dismissal of the claims asserted by Mary K. Boley ("Boley"), Kandie Sutter ("Sutter") and Phyllis Johnson ("Johnson") (collectively, "Plaintiffs") in their second amended complaint (ECF No. 18.). As explained below, Plaintiffs lack standing to pursue claims relating to the discrete investments those individuals never selected, and the Court should dismiss such claims.

**I.  INTRODUCTION**

  This is one of approximately 30 lawsuits filed by the same plaintiffs' law firm within the last ten months challenging the oversight of the retirement plans of large corporate employers. *See, e.g.*, *Martin v. CareerBuilder, LLC*, No. 19-cv-6463, 2020 WL 3578022 (N.D. Ill. July 1, 2020) (dismissing fiduciary breach claims alleging that 401(k) plan participants paid excessive recordkeeping fees and that plan fiduciaries should have selected only institutional share class and passively-managed investments); *Pinnell v. Teva Pharms. USA, Inc.*, No. 19-5738, Amended Complaint, Dkt. No. 10 (E.D. Pa.) (alleging similar claims against 401(k) plan fiduciaries with

respect to recordkeeping fees as well as the offering of mutual funds rather than collective trusts, actively-managed investments rather than passive funds, and allegedly higher-cost share classes). In this case, Plaintiffs are three former participants in the Universal Health Services, Inc. Retirement Savings Plan (the "Plan") who contend Defendants breached their fiduciary duties under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA") by (i) selecting Plan investments that charged excessive fees or underperformed "prudent" alternative investments; and (ii) permitting the Plan's participants to pay excessive recordkeeping fees. (*See* Second Am. Compl. ¶ 6.)

The Plan offered 37 investment options during the putative class period. Plaintiffs invested in only seven of those funds. They have not a "penny of gain or loss" at risk in relation to the remaining 30 funds. *See Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1619 (2020). Because Plaintiffs cannot have been harmed by any "excessive" fees or "underperformance" of the funds in which they did not invest, Plaintiffs lack Article III standing to pursue any claims with respect to those 30 funds. Accordingly, the Court should dismiss Plaintiffs' claims as to those funds for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

## II.     FACTS

### A.     The Plan.

The Plan is a "defined contribution" plan allowing UHS employees to set aside a portion of their income for retirement. (*See* Second Am. Compl. ¶¶ 2-5, 18.) Plan participants choose the investments and investment allocation for their individual accounts from a menu of investments. (*Id.* ¶ 18.) During the putative class period of June 5, 2014 through "the date of judgment," Plan participants could allocate their contribution to one or more of 37 investment

options.  (Cullinan Decl. ¶¶ 4-5.)[1]  These investments included mutual funds, a collective investment trust ("CIT"), and a money market fund.  (*Id.* ¶ 5; Second Am. Compl. ¶ 18.)  The mutual funds included a suite of Fidelity Freedom K "target date" funds.  (Cullinan Decl. ¶ 5.)  In April 2020, the Plan replaced the Fidelity Freedom K funds with Fidelity Institutional Asset Management ("FIAM") Index Target Date Y funds.  (*Id.* ¶ 5 n.1.)

### B. The Named Plaintiffs and Their Investments.

**Boley.**  Ms. Boley worked for UHS from January 20, 2014 through August 26, 2019, and has participated in the Plan from October 6, 2014 through the present.  (Cullinan Decl. ¶ 7.)  From October 6, 2014 through April 17, 2020, she invested in a single fund: the Fidelity Freedom 2050 Fund.  (*Id.*)  Effective April 17, 2020, UHS replaced the Fidelity Freedom 2050 Fund with the FIAM Target Date 2050 Fund, and transferred or "mapped" the assets of participants who invested in the Fidelity Freedom 2050 Fund (including Ms. Boley) into the FIAM Target Date 2050 Fund.  (*Id.* ¶¶ 5 n.1, 7.)

**Johnson.**  Ms. Johnson worked for UHS from July 5, 2016 through October 31, 2018, and participated in the Plan from February 1, 2018 through November 15, 2018.  (*Id.* ¶ 8.)  During that period, she also invested in a single fund: the Fidelity Freedom 2045 Fund.  (*Id.* ¶ 8.)

**Sutter.**  Ms. Sutter worked for UHS from September 19, 2005 through August 7, 2019, and participated in the Plan from December 13, 2007 through the present.  (*Id.* ¶ 9.)  From June 5, 2014 through the present, she invested in five funds: the Fidelity Freedom 2025 Fund (which

---

[1] The declaration of Virginia Cullinan is filed herewith as Exhibit 1.  The Court can consider this evidence in conjunction with Defendants' Rule 12(b)(1) motion.  *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (in reviewing a factual attack on jurisdiction under Rule 12(b)(1), "the court may consider evidence outside the pleadings"), *modified on other grounds by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003); *Burke v. Gonzales*, No. 06-0573, 2006 WL 3762061, at *4 n.11 (M.D. Pa. Dec. 21, 2006) ("[N]otwithstanding the fact that Defendants' Motion is one to dismiss, since it is under Rule 12(b)(1) and we deem it as a factual challenge to jurisdiction, we will consider [the] Declaration.").

transitioned to the FIAM Target Date 2025 Fund on April 17, 2020), the Fidelity Contrafund, the Fidelity Managed Income Portfolio II, the PIMCO Total Return Fund, and the MetWest Total Return Bond Fund. (*Id.* ¶ 9.)

To summarize, of the 37 investment options available to Plan participants during the proposed class period, the named Plaintiffs invested in only the following seven:

1. Fidelity Freedom 2025 Fund K / FIAM Index Target Date Y 2025 Fund[2]
2. Fidelity Freedom 2050 Fund K / FIAM Index Target Date Y 2050 Fund
3. Fidelity Freedom 2045 Fund K / FIAM Index Target Date Y 2045 Fund
4. Fidelity Contrafund K
5. Fidelity Managed Income Portfolio II Class IV
6. MetWest Total Return Bond Fund Plan
7. PIMCO Total Return Fund Instl.

(*Id.* ¶¶ 5-9.) The named Plaintiffs did <u>not</u> invest in any of the following 30 investment options during the proposed class period:

1. Fidelity Freedom 2005 Fund K / FIAM Index Target Date Y 2005 Fund
2. Fidelity Freedom 2010 Fund K / FIAM Index Target Date Y 2010 Fund
3. Fidelity Freedom 2015 Fund K / FIAM Index Target Date Y 2015 Fund
4. Fidelity Freedom 2020 Fund K / FIAM Index Target Date Y 2020 Fund
5. Fidelity Freedom 2030 Fund K / FIAM Index Target Date Y 2030 Fund

---

[2] For purposes of this analysis, UHS presents the similar versions of the Fidelity Freedom Funds and the FIAM Target Date Funds as the same investment options. As noted, effective April 17, 2020 UHS replaced the Fidelity Freedom suite of target date funds with the FIAM suite of target date funds. (Cullinan Decl. ¶ 5 n.1.) At that time, participant assets invested in the Fidelity Freedom funds mapped to the corresponding version of the FIAM funds; for example, a participant's assets that were invested in the Fidelity Freedom 2025 Fund were mapped to the FIAM Target Date 2025 Fund. (*Id.*)

6. Fidelity Freedom 2035 Fund K / FIAM Index Target Date Y 2035 Fund

7. Fidelity Freedom 2040 Fund K / FIAM Index Target Date Y 2040 Fund

8. Fidelity Freedom 2055 Fund K / FIAM Index Target Date Y 2055 Fund

9. Fidelity Freedom 2060 Fund K / FIAM Index Target Date Y 2060 Fund

10. Fidelity Freedom 2065 Fund K / FIAM Index Target Date Y 2065 Fund

11. Fidelity Freedom Income Fund K

12. Fidelity Balanced Fund K

13. Fidelity Convertible Securities Fund K

14. Fidelity Diversified International Fund K

15. Fidelity Government Money Market Fund

16. Fidelity Total Market Index Fund

17. DFA Inflation Protected Securities Portfolio Instl.

18. Franklin Small Cap Growth Fund R6

19. Harbor Capital Appreciation Fund Instl.

20. Morgan Stanley Institutional Fund, Inc. Small Company Growth Portfolio R6

21. Neuberger Berman Genesis Fund R6

22. Neuberger Berman Large Cap Value Fund Instl.

23. Northern Small Cap Value Fund

24. Principal Midcap Fund R6

25. T. Rowe Price Equity Income Fund

26. Vanguard Equity Income Fund Admiral

27. Vanguard Small Cap Index Fund Instl.

28. Vanguard Total Bond Market Index Fund Instl.

29. Vanguard Total International Stock Index Fund Instl.

**30.** Wells Fargo Special Mid Cap Value Fund R6

(*Id.* ¶¶ 5-9.)

## III. PLAINTIFFS' CLAIMS

Plaintiffs assert three claims: breach of fiduciary duty (Count I); failure to monitor fiduciaries and co-fiduciary liability (Count II); and, in the alternative, "knowing breach of trust" as to any parties that "are not deemed to be fiduciaries" (Count III).  (Second Am. Compl. ¶¶ 70-85.)  Plaintiffs seek an unspecified amount in monetary damages, in addition to declaratory and injunctive relief.  (*Id.*, Prayer for Relief.)

## IV. ARGUMENT

"Under Fed. R. Civ. P. 12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim.  A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)).  "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005).  On a motion to dismiss for lack of standing, a plaintiff "bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *N.J. Spine & Orthopedics, LLC v. Bae Sys., Inc.*, No. 2:19-cv-10735, 2020 WL 491258, at *1 (D.N.J. Jan. 29, 2020) (citations and internal quotation marks omitted).  "For the purpose of determining standing, [the Court] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the complaining party." *Id.* (citations omitted).

### A. Article III Standards.

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Courts enforce the case-or-controversy requirement through several justiciability doctrines that "cluster about Article III." *Allen v. Wright*, 468 U.S. 737, 750 (1984) (citation omitted), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). They include standing, ripeness, mootness, and the prohibition on advisory opinions. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). "[P]erhaps the most important of these doctrines" is standing. *Allen*, 468 U.S. at 750. As the Supreme Court recently confirmed, "[t]here is no ERISA exception to Article III." *Thole*, 140 S. Ct. at 1622.

The "irreducible constitutional minimum of standing consists of three elements." *Spokeo,* 136 S. Ct. at 1547. A plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* The injury-in-fact element requires a showing that a plaintiff "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (citations omitted). The mere act of filing a class action "adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Id.* at 1547 n.6.

Plaintiffs here must demonstrate standing for "each claim" and "for each form of relief that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citations and internal quotations omitted); *see also Dezelan v. Voya Ret. Ins. & Annuity Co.*, No. 3:16-CV-1251, 2017 WL 2909714, at *5 (D. Conn. July 6, 2017) (ERISA plaintiff asserting fiduciary breach claims "must

7

demonstrate standing for each claim" and "with respect to each asserted claim . . . a plaintiff must always have suffered a distinct and palpable injury to herself") (internal citations omitted).

Plaintiffs purport to assert claims on behalf of the Plan under ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2). "[I]n a defined-contribution plan, such as a 401(k) plan, the retirees' benefits are typically tied to the value of their accounts, and the benefits can turn on the plan fiduciaries' particular investment decisions." *Thole*, 140 S. Ct. at 1618. If the plan fiduciaries select an imprudent or overpriced investment for inclusion in the plan (as Plaintiffs allege happened here), that decision would harm *only* those plan participants who invested their individual account assets in that fund. *See LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008) (claims under ERISA Section 502(a)(2) "authorize recovery for fiduciary breaches that impair the value of plan assets *in a participant's individual account*") (emphasis added); *see also Stanley v. George Washington Univ.*, 394 F. Supp. 3d 97, 103 (D.D.C. 2019) (a plan participant may sue to recover for "fiduciary breaches that impair[ed] the value of plan assets in [her] individual account") (quotation and citation omitted) (alterations in original), *aff'd*, 801 F. App'x 792 (D.C. Cir. 2020); *Wagner v. Stiefel Labs., Inc.*, No. 1:12-CV-3234, 2015 WL 4557686, at *11 (N.D. Ga. June 18, 2015) ("Since *LaRue*, courts have allowed former employees who have cashed out of defined contribution plans to sue as participants to recover losses to their individual accounts resulting from a breach of fiduciary duty.").

    **B.**     **Plaintiffs Suffered No Harm From Investments They Never Held And Thus Lack Standing To Pursue Claims Involving Those Funds.**

Plaintiffs lack standing to pursue claims relating to the 30 Plan funds in which they never invested. In *Thole*, the Supreme Court confirmed that a plaintiff in an ERISA fiduciary breach case satisfies Article III standing only if she seeks redress for her own injuries. 140 S. Ct. at 1619-20. Conversely, a plaintiff lacks Article III standing to seek redress for injuries suffered by

8

*other* Plan participants for investments based on those participants' investment decisions. *See Thole*, 140 S. Ct. at 1619 (ERISA plaintiffs "have no concrete stake" in litigation if they would receive "not a penny more" in retirement benefits from a favorable ruling); *see also Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) ("It is not enough that the conduct of which the plaintiff complains will injure *someone*. The complaining party must also show that he is within the class of persons who will be concretely affected.") (emphasis in original).

*Thole* involved a fiduciary breach claim relating to the management of a defined benefit retirement plan.[3] The *Thole* plaintiffs alleged that the plan's fiduciaries imprudently invested the plan's assets, but conceded this "breach" did not impact their monthly retirement benefit because they still would receive the retirement benefit they were promised under the terms of the plan. 140 S. Ct. at 1619 ("If Thole and Smith were to *lose* this lawsuit, they would still receive the exact same monthly benefits that they are already slated to receive, not a penny less.") (emphasis in original). That meant "winning or losing" would not alter their retirement benefit, leading the Supreme Court to rule that the plaintiffs had no "concrete stake" in the lawsuit. *Id.*

The same result applies to Plaintiffs' claims regarding investments they never selected. Win or lose, Plaintiffs will receive "not a penny less" (or more), *Thole*, 140 S. Ct. at 1619, because they never invested their individual accounts in those funds. For example, Plaintiffs contend that Defendants breached their fiduciary duties by offering the Fidelity Diversified

---

[3] A defined benefit plan, unlike the defined contribution plan at issue here, consists of a general pool of assets rather than individual accounts. A defined benefit plan, "as its name implies, is one where the employee, upon retirement, is entitled to a fixed periodic payment." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999) (citations omitted). In a defined benefit plan, "the employer typically bears the entire investment risk and . . . must cover any underfunding as the result of a shortfall that may occur from the plan's investments." *Id.* In a defined contribution plan, "there can never be an insufficiency of funds in the plan to cover promised benefits . . . since each beneficiary is entitled to whatever assets are dedicated to his individual account." *Id.* (quotation marks and citations omitted).

9

International Class K Fund, a mutual fund that charges Plan participants 63 basis points in investment management fees.[4] Plaintiffs claim that the Plan should have instead offered the Fidelity Diversified International Commingled Pool, a CIT that charges 58 basis points.  (Second Am. Compl. ¶ 47.)  Defendants dispute that the two funds are comparable because the latter utilizes a completely different investment strategy—and more fundamentally, Defendants dispute that offering the former fund instead of the latter is a breach of fiduciary duty because "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund."  *Renfro v. Unisys Corp.*, No. 07-2098, 2010 WL 1688540, at *6 (E.D. Pa. Apr. 26, 2010) (quoting *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009)), *aff'd*, 671 F.3d 314 (3d Cir. 2011).

But even if offering the Fidelity Diversified International Class K Fund constituted a breach of fiduciary duty, none of the Plaintiffs invested in that fund and cannot have suffered an injury in fact by its inclusion in the Plan.  This means, in turn, Plaintiffs lack Article III standing for that fund and every fund they never selected.  *See Thole*, 140 S. Ct. at 1619; *Patterson v. Morgan Stanley*, No. 16-cv-6568, 2019 WL 4934834, at *5 (S.D.N.Y. Oct. 7, 2019) ("Losses incurred by funds in which Plaintiffs did not invest cannot have impaired the value of Plaintiffs' individual accounts," meaning plaintiffs were not injured by inclusion of those funds).

Accordingly, the Court should dismiss Plaintiffs' claims related to the 30 funds in which they did not invest.  *See Wilcox v. Georgetown Univ.*, No. 18-422, 2019 WL 132281, at *10

---

[4] Generally speaking, the annual fee associated with managing an investment is known as an investment management fee.  A fund expresses its investment management fee as an "expense ratio," which represents the percentage of assets deducted each year by the investment manager to pay for fund expenses.  *See* Morningstar Investing Glossary, Expense Ratio, http://www.morningstar.com/InvGlossary/expense_ratio.aspx (Exhibit 2).  For example, a participant who invests $1,000 in a fund with an expense ratio of 0.10% would pay an annual fee of $1 ($1,000 * .001).

(D.D.C. Jan. 8, 2019) (an ERISA plaintiff who does not invest in a challenged fund "has no standing to complain about its performance because he . . . has no injury to show"); *Johnson v. Delta Air Lines, Inc*., No. 1:17-CV-2608-TCB, 2017 WL 10378320, at *2 (N.D. Ga. Dec. 12, 2017) ("Plaintiffs have not alleged that they were invested in the criticized funds or paid the allegedly excessive fees.  Therefore, Plaintiffs do not have standing."); *Dezelan*, 2017 WL 2909714, at *6 ("If an ERISA plaintiff brings claims concerning plans in which she did not participate she lacks the requisite redressability or injury-in-fact to give her standing to sue."); *Marshall v. Northrop Grumman Corp.*, No. 16-6794, 2017 WL 2930839, at *8 (C.D. Cal. Jan. 30, 2017) ("Plaintiffs have not alleged they individually invested in that fund such that they have suffered a concrete injury."); *Bd. of Trs. of the S. Cal. IBEW-NECA Defined Contribution Plan v. Bank of N.Y. Mellon Corp.*, 287 F.R.D. 216, 224 (S.D.N.Y. 2012) (plaintiff lacked standing to represent plans investing in notes other than those it held because plaintiff "has not suffered an 'injury-in-fact' with respect to . . . notes in which it did not invest"); *David v. Alphin*, 817 F. Supp. 2d 764, 781-82 (W.D.N.C. 2011) (dismissing fiduciary breach claims concerning fund underperformance because no named plaintiff participated in the challenged fund), *aff'd*, 704 F.3d 327 (4th Cir. 2013); *Yost v. First Horizon Nat'l Corp.*, No. 08-2293, 2011 WL 2182262, at *6 (W.D. Tenn. June 3, 2011) (plaintiff who "never had any holdings in the First Funds . . . did not suffer . . . injury-in-fact and [lacked] standing to sue for any breach of fiduciary duty as to the selection or retention of First Funds as an investment option").

## V.     CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion and dismiss all claims relating to investments in which Plaintiffs did not invest their individual Plan accounts.

Dated: October 9, 2020                    Respectfully submitted,

*/s/ Brian T. Ortelere*
Brian T. Ortelere
Attorney ID No. 46464 (PA)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel.: 215-963-5000
Fax: 215-963-5001
brian.ortelere@morganlewis.com

Deborah S. Davidson (*pro hac vice*)
Attorney ID No. 6255813 (IL)
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL 60601
Tel.: 312-324-1000
Fax: 312-324-1001
deborah.davidson@morganlewis.com

Sean K. McMahan (*pro hac vice forthcoming*)
Attorney ID No. 140861 (GA)
Stephen K. Dixon (*pro hac vice*)
Attorney ID No. 87462 (VA)
MORGAN, LEWIS & BOCKIUS LLP
111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel.: 202-739-3000
Fax: 202-739-3001
sean.mcmahan@morganlewis.com
stephen.dixon@morganlewis.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I, Brian T. Ortelere, hereby certify that on this 9th day of October 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record for this case, and which is available for viewing and downloading from the CM/ECF system of the U.S. District Court for the Eastern District of Pennsylvania.

                                                   */s/ Brian T. Ortelere*
                                                   Brian T. Ortelere