## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARY K. BOLEY**, *et al.* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  20-2644** |
| | : | |
| **UNIVERSAL HEALTH SERVICES,** | : | |
| **INC.**, *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                      **October 30, 2020**

Employers creating and monitoring an employee retirement plan offering a variety of investment funds which allow employees to choose their investments among those offered in the plan subject to market fluctuation must comply with fiduciary duties defined by Congress in the Employee Retirement Income Security Act of 1974.  Congress permits the employees to sue if the employers and their designated retirement plan fiduciaries allow the retirement plan to pay inappropriate management fees or otherwise lose value for reasons arguably within their control. But employees typically cannot challenge losses in funds they did not invest in. But as our Court of Appeals recently instructed, the employees can challenge decisions which affect the value of the plan if they can allege specific extra costs affecting their funds and thus imposed upon them. We today address a plan fiduciaries' motion to partially dismiss arguing the employees lack constitutional standing to recover for losses in investments they did not invest.  Upon scrutiny, we deny the motion as the employees sufficiently allege constitutional standing to pursue claims based on fees and investment decisions affecting them directly.  The plan fiduciaries' arguments may be appropriate in *limine* for damages or in challenging the employees' ability to serve as class representatives but do not warrant dismissal.

I.      **Alleged facts**[1]

Universal Health Services sponsors the Universal Health Services, Inc. Retirement Savings Plan, a defined contribution retirement plan under which qualified employees may invest a percentage of their income in one or more of over thirty available investment options and Universal Health will match a portion of their contributions.[2]  As the Plan sponsor, Universal Health is a fiduciary of the Plan under the Employee Retirement Income Security Act of 1974 ("ERISA").[3] Universal Health's Administrative Committee is responsible for selecting the Plan's various investment options in which participants may invest.[4]

As of 2018, the Plan included 41,872 participants with assets totaling over $1.9 billion, rendering the Plan among the largest defined contribution retirement plans in the country.[5] The Plan's investment options consisted of mutual funds and a collective investment trust.[6]  The Plan's offerings included several actively managed funds, which charge higher fees than passively managed funds, and mutual funds, which charge higher fees than other investment vehicles like collective trusts.[7]  In 2018, at least nineteen of the Plan's funds cost the participants more money than comparable funds found in similarly-sized plans.[8]  Plan participants each paid annual recordkeeping fees of $44, although the Plan should have been able to obtain these services at much lower costs.[9]

Former Universal Health employees Mary Boley, Kandie Sutter, and Phyllis Johnson, on behalf of themselves and others similarly situated, sues Universal Health and its Investment Committee under ERISA, alleging they breached their fiduciary duties, including by:

- retaining a suite of thirteen expensive and underperforming actively managed target date funds despite the availability of lower cost, passively managed index funds;

- failing to monitor the excessive recordkeeping fees and administrative costs charged to Plan participants relative to other similarly large plans; and

- offering an excessively expensive menu of investment options by:

  - failing to monitor average expense ratios of similarly sized plans;

  - failing to identify and select collective trusts where available; and

  - failing to monitor investment options to ensure they were in the least expensive available class share.[10]

They allege the Fiduciaries further breached their duties by failing to monitor the Committee's appointees.[11] These breaches lost the Plan millions of dollars.[12] They bring these claims on behalf of the Plan under section 1132(a)(2).[13]

## II.   Analysis

The Fiduciaries move to partially dismiss the Employees' claims under Federal Rule 12(b)(1), arguing they lack constitutional standing to pursue claims relating to alleged losses in discrete investments they never selected.[14]  The Fiduciaries argue Ms. Boley, Ms. Sutter, and Ms. Johnson only invested in seven of the Plan's funds during the putative class period and therefore lack standing to bring claims about the remaining funds.[15] They rely on the Supreme Court's recent analysis in *Thole v. U.S. Bank, N.A.*[16] to argue the named participants cannot demonstrate injury with respect to the funds they did not invest in because "[w]in or lose, [p]laintiffs will receive 'not a penny less' (or more)."[17] The Employees argue they have alleged injury with respect to each of their claims –which implicate "plan-level conduct" – and may therefore bring their claims on behalf of the Plan.[18] We agree with the Employees and find they have standing.

To demonstrate Article III standing, each Employee must allege (1) she suffered an injury in fact, (2) fairly traceable to the Plan's challenged conduct, and (3) likely to be redressed by a

favorable judicial decision.[19] To establish injury in fact, a Employee must show she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."[20] "Standing allegations need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury."[21]

The Employees seeking relief under ERISA must demonstrate injury to one's own plan account to have Article III standing.[22] She may show injury through "[d]iminished returns relative to available alternative investments and high fees…regardless of whether the plaintiff suffered an actual loss on his investment or simply realized a more modest gain."[23] The Employee may also satisfy this requirement by alleging an injury to a plan's assets unrelated to specific funds, if plan participants are all assessed a portion of the injury.[24] Once an ERISA plaintiff has alleged injury to her own account, she "may seek relief under § 1132(a)(2) that sweeps beyond [her] own injury."[25] Whether an individual may bring ERISA claims in a representative capacity on behalf of all plan participants, however, is a question of class certification rather than standing.[26]

The Supreme Court recently addressed Article III standing in the ERISA context in *Thole*.[27] Two participants in a defined-benefit plan, on behalf of a putative class of participants, brought an action under ERISA alleging plan fiduciaries breached their duties of loyalty and prudence for mismanaging the plan's assets.[28] The Court found the participants lacked constitutional standing to assert their claims because they lacked a concrete stake in the outcome out the lawsuit; due to the nature of defined-benefit plans, the participants would continue to receive the same fixed payments each month from the plan and could not demonstrate that a win or a loss in the litigation would affect these fixed payments.[29]

Our Court of Appeals recently reversed the dismissal of similar ERISA claims under section 1132(a)(2) in *Sweda v. University of Pennsylvania* finding plan participants (1) plausibly

alleged fiduciaries breached their duties and (2) had Article III standing to bring their claims.[30]
The plan participants alleged the fiduciaries breached their duties by, among other things, "paying
unreasonable investment fees, including and retaining high-cost investment options with
historically poor performance compared to available alternatives, and retaining multiple options
in the same asset class and investment style."[31] Our Court of Appeals found the plan participants
demonstrated individual injury to bring the breach of fiduciary duty claims by alleging "one or
more of the named [p]laintiffs…invested in underperforming options including the CREF Stock
and TIAA Real Estate accounts"; this allegation sufficiently "link[ed] the named plaintiffs with
the underperforming investment options" for standing.[32]

We are reviewing the Fiduciaries' partial Motion to dismiss based on standing as to specific
funds Ms. Boley, Ms. Sutter, and Ms. Johnson did not personally invest in even though they allege
a Plan-wide breach as to process.  The Fiduciaries' argument is akin to an *in limine* motion or
possible typicality argument on class certification.   Judge Edgardo Ramos recently evaluated –
and denied – a similar argument in *Falberg v. Goldman Sachs Group, Inc.*[33] He declined to dismiss
ERISA breach of fiduciary duty claims even though the plan participant only invested in three of
the five proprietary funds at issue.[34] Judge Ramos found the plan participant had standing to bring
his claims because he alleged "millions in losses to the Plan resulting from Defendants' decision
to maintain underperforming, high cost funds, which specifically affected him as a participant
invested in several of them."[35] He further found the allegation the fiduciaries acted in their own
interest by offering a category of proprietary, high-cost funds applied to all participants who
invested in any one of those funds.[36]

We can also draw guidance from courts evaluating Article III standing at the class
certification stage and finding plaintiffs have standing to bring their ERISA claims even though

they did not personally invest in each of the funds at issue.[37] In *Cassell*, for example, Chief Judge Waverly D. Crenshaw, Jr. found plan participants demonstrated standing to pursue all of their ERISA claims on behalf of their plan despite not personally investing in the majority of the challenged funds.[38] Chief Judge Crenshaw found plaintiffs had standing to assert their claims regarding the fiduciaries' failure to use the size of the plan to leverage lower, reasonable fees and their choice to retain four recordkeepers instead of one because these were allegations "of an imprudent process that allegedly injured all Plan participants, including [p]laintiffs, when a portion of those fees were charged to individual accounts."[39] Chief Judge Crenshaw further found standing for the claims regarding particular imprudent funds because "[a]t least two [p]laintiffs were invested in [allegedly imprudent] stocks."[40]

Judge Catherine C. Eagles in *Clark v. Duke University* similarly rejected defendants' argument plan participants only demonstrated injury with respect to the twenty-five plan funds they invested in rather than all 375 funds included in the plan.[41] Judge Eagles evaluated each ERISA claim and found they had standing to pursue all of them.[42] She found the claims relating to the fiduciaries' overall decision-making processes affected all plan participants, including the named plaintiffs.[43] Judge Eagles further found the plan participants had standing to bring their claims related to specific imprudent funds because they at least one named plaintiff invested at least one of the funds at issue in the claims.[44]

The Employees separate several claims regarding the Fiduciaries' alleged breaches into two counts. After parsing out these claims, we find the Employees alleged injury with respect to each of their claims.

Count One contains three claims. The first claim involves the Plan's inclusion of a suite of thirteen Fidelity Freedom target date funds.[45] The Employees allege the Fiduciaries imprudently

offered plan participants the high-cost, actively managed suite of funds even though index funds – with much lower fees – were available.[46] The Fiduciaries concede Ms. Boley, Ms. Johnson, and Ms. Sutter each invested in at least one of these allegedly imprudent Fidelity Freedom target date funds.[47] As our Court of Appeals held in *Sweda*, this admitted fact is enough to link them to some of the underperforming funds and demonstrate individualized injury for standing.

The Employees' second claim in Count One alleges Universal Health failed to monitor the Plan's recordkeeping and administrative costs, leading to the Plan participants paying much higher fees than necessary.[48] The Employees allege, for example, the Fiduciaries failed to leverage the Plan's large size, and resulting negotiating power, to lower these fees.[49] This claim does not involve, or even mention, a specific fund.  It pleads injury Plan-wide.[50] It affects all Plan participants, including Employees, through their payment of a portion of these fees.

The Employees' final claim in Count One essentially alleges the Fiduciaries lacked a "prudent investment evaluation process."[51]  The Employees offer three examples of this allegedly imprudent process, including failure to (1) monitor average expense ratios of similarly sized plans; (2) identify and select alternative investment vehicles like collective trusts; and (3) identify and select available lower-cost class shares.[52] The Employees allege this imprudent process forced them, and all Plan participants, to choose from an "expensive menu of investment options."[53]  We join Judges Crenshaw and Eagles in finding, at this preliminary stage, claims relating to allegedly imprudent decision-making processes injure all plan participants - including Ms. Boley, Ms. Johnson, and Ms. Sutter here – through receipt of lower returns or payment of excessive costs. The Employees alleged injury with respect to this third claim.

The Employees second grouping of claims (Count Two) is a failure to monitor.  They allege the Fiduciaries breached their duties by failing to monitor the performance of the Committee and

its appointed members.[54] This failure led to the Plan continuing to maintain "imprudent, excessively costly, and poorly performing" investments, injuring the Plan and all of its participants.[55] This claim similarly relates to the Fiduciaries' conduct rather than specific funds, and thus injures all Plan participants, including Ms. Boley, Ms. Johnson, and Ms. Sutter. The Employees also allege injury with respect to these monitoring claims.

The Fiduciaries misconstrue *Thole* in the Motion and on reply.[56]  First, the Fiduciaries err in arguing the nature of the plan was "irrelevant" to the Court's standing analysis.[57]  We disagree; the Court stated the defined-benefit nature of the plan rather than a defined-contribution plan to be "[o]f decisive importance" because in a defined-benefit plan, participants "receive a fixed payment each month, and the payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions" while in a defined-contribution plan, "benefits can turn on the plan fiduciaries' investment decisions."[58] The Fiduciaries further attempt to "make standing law more complicated than it needs to be" by arguing ERISA plaintiffs are now required to demonstrate standing with respect to each of the funds in a plan, regardless of the claims the plaintiffs bring.[59] The Supreme Court in *Thole* and the Constitution require plaintiffs demonstrate a concrete stake in the outcome of each of their claims – the Employees have done so here.

Unlike in *Thole*, Ms. Boley, Ms. Johnson, and Ms. Sutter have demonstrated loss to their own accounts with respect to each of their three claims. They suffered individualized injury for their first claim regarding the imprudence of the suite of Fidelity Freedom Funds because they each invested in at least one of those funds. They further allege injury arising to pursue their latter two claims related to the Plan's allegedly imprudent decision-making processes, because at least a portion of the excessive fees or lower returns affected their individual accounts. They sufficiently plead standing for their claims under *Thole*, as the outcome of each of these claims could affect

their returns. We would agree with Fiduciaries that, had Ms. Boley, Ms. Johnson, and Ms. Sutter attempted to bring over thirty separate claims, each involving the imprudence of one Plan fund, they could only demonstrate injury for the claims involving the few funds they personally invested in. The Employees do not pursue such piecemeal claims.

The other cases cited by the Fiduciaries are similarly distinguishable. In *Marshall v. Northrop Grumman Corp.*, for example, Judge André Birotte Jr. found plan participants lacked Article III standing to bring an ERISA breach of fiduciary claim regarding the management of a particular plan fund because the plan participants failed to allege they invested in the particular fund.[60] Judge Victor Bolden in *Dezelan v. Voya Retirement Insurance and Annuity Co.* similarly dismissed several ERISA claims about a specific category of funds because fiduciaries did not offer funds from the challenged category in the named plaintiff's plan.[61]  Ms. Boley, Ms. Johnson, and Ms. Sutter invested in at least one fund for their claims regarding specific conduct affecting all funds. We find the remaining claims do not relate to specific funds and instead involve the Plan generally.

## III.   Conclusion

Mses. Boley, Johnson, and Sutter allege individualized injury – and therefore Article III standing – with respect to each of their claims based on the Fiduciaries' process applicable to all funds offered to them.  While the Employees offer examples of conduct in funds which may not directly apply to them, we construe those examples as context for their claim the applied process causes them losses. They "may proceed under § 1132(a)(2) on behalf of the plan or other plan participants" even if relief "sweeps beyond [their] own injur[ies]."[62] We deny Universal Health's Motion for partial dismissal of their claims. We do not, however, determine whether Ms. Boley, Ms. Johnson, and Ms. Sutter are appropriate proper class representatives to bring claims on behalf

of all Plan participants. This inquiry may be appropriate at the class certification stage or in understanding their possible damages model.

---

[1] These facts are drawn from the Employees' second amended Complaint. These facts are not in dispute, so we can assume they are true for purposes of the Motion for partial dismissal under Rule 12(b)(1). *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).

[2] ECF Doc. No. 18 at ¶¶ 12, 18.

[3] *Id.* at ¶ 5.

[4] *Id.* at ¶¶ 13-14.

[5] *Id.* at ¶ 4.

[6] *Id.* at ¶ 18.

[7] *Id.* at ¶¶ 23-25, 47-48.

[8] *Id.* at ¶ 45.

[9] *Id.* at ¶¶ 41-44.

[10] *Id.* at ¶¶ 23-27, 41-47. Over the past nine months, the attorneys for the Employees have filed more than two-dozen nearly identical lawsuits against large corporate employers. *See, e.g.,* Amended Complaint, *Pinnell v. Teva Pharms. USA, Inc.*, No. 19-5738, ECF Doc. No. 10 (E.D. Pa. Feb. 5, 2020) (alleging similar claims against 401(k) plan fiduciaries with respect to recordkeeping fees as well as the offering of mutual funds rather than collective trusts, actively-managed investments rather than passive funds, and allegedly higher cost share classes); *Martin v. CareerBuilder, LLC*, No. 19-6463, 2020 WL 3578022 (N.D. Ill. July 1, 2020) (dismissing fiduciary breach claims alleging that 401(k) plan participants paid excessive recordkeeping fees and that plan fiduciaries should have selected only institutional share class and passively-managed investments). One of these cases, *Pinnell v. Teva Pharmaceuticals, Inc.*, appears before this Court. In *Pinnell*, the employer Teva moved to dismiss arguing the plan's participants failed to allege "[Teva's] fiduciary process was fatally flawed." Mot. to Dismiss, *Pinnell v. Teva Pharms. USA, Inc.*, No. 19-5738, ECF Doc. No. 19-1 at 7 (E.D. Pa. Mar. 3, 2020). We found the plan participants plausibly alleged facts "from which we can reasonably infer a breach might have occurred," and we denied Teva's motion to dismiss. Memorandum, *Pinnell v. Teva Pharms. USA, Inc.*, No. 19-5738, ECF Doc. No. 25 at 10 (E.D. Pa. Mar. 31, 2020). We did not address whether plan participants have Article III standing to challenge available investment options they themselves did not select. We consider this issue for the first time here.

[11] ECF Doc. No. 18 at ¶¶ 75-80.

[12] *Id.* at ¶ 81.

[13] *Id.* at ¶ 56.

[14] ECF Doc. No. 20. A jurisdictional challenge under Federal Rule 12(b)(1) can be either a facial or factual attack. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial challenge is reviewed like a 12(b)(6) motion, requiring us to consider all allegations of the complaint to be true. *Hartig Drug Company, Inc. v. Senju Pharmaceutical Co. Ltd.*, 836 F.3d 261, 268 (3d Cir. 2016). A factual attack, on the other hand, does not give the plaintiff the presumption of truth and instead allows "a court [to] weigh and consider evidence outside the pleadings." *Id.* (citations and quotations omitted). When considering a factual challenge, "the plaintiff [has] the burden of proof that jurisdiction does in fact exist." *Id.* (citations and quotations omitted).

The Fiduciaries attach various signed declarations to their Motion. We therefore treat the Motion as a factual attack and may consider this extrinsic evidence. *See Davis*, 824 F.3d at 346; *Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.*, 673 F.2d 700, 711 (3d Cir. 1982). Plaintiffs do not dispute the Declarations or offer additional facts.

[15] ECF Doc. No. 20-1 at 8-11. The Employees do not allege the specific funds they invested in during the putative class period. A Declaration attached to the Motion swears (1) Ms. Boley invested in the Fidelity Freedom 2050 Fund; (2) Ms. Johnson invested in the Fidelity Freedom 2045 Fund; and (3) Ms. Sutter invested in the Fidelity Freedom 2025 Fund, the Fidelity Contrafund, the Fidelity Managed Income Portfolio II, the PIMCO Total Return Fund, and the MetWest Total Return Bond Fund during the putative class period. ECF Doc. No. 20-2 at ¶¶ 7-9.

[16] 140 S. Ct. 1615 (2020).

[17] ECF Doc. No. 20-1 at 9 (quoting *Thole*, 140 S. Ct. at 1619).

[18] ECF Doc. No. 30 at 4-10.

[19] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (2016); *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

[20] *Id.* at 1548 (citing *Lujan*, 504 U.S. at 560).

[21] *Baur v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003) (citing *Lujan*, 504 U.S. at 561)).

[22] *Sweda v. Univ. of Pa.*, 923 F.3d 320, 334 n.10 (3d Cir. 2019) (finding ERISA plaintiffs sufficiently alleged individual injuries for Article III standing because the complaint alleged they invested in some underperforming funds); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 592 (8th Cir. 2009) ("[Plaintiff] has satisfied the requirements of Article III standing because he has alleged actual injury to his own Plan account.").

---

[23] *Bekker v. Neuberger Berman Group LLC*, No. 16-6123, 2018 WL 4636841, at *4 (S.D.N.Y. Sept. 27, 2018); *see also Tibble v. Edison International*, 843 F.3d 1187, 1198 (9th Cir. 2016) ("It is beyond dispute that the higher the fees charged to a beneficiary, the more the beneficiary's investment shrinks…Beneficiaries subject to higher fees for materially identical funds lose not only the money spent on higher fees, but also 'lost investment opportunity'; that is, the money that the portion of their investment spent on unnecessary fees would have earned over time.").

[24] *Clark v. Duke Univ.*, No. 16-1044, 2018 WL 1801946, at *3 (M.D.N.C. Apr. 13, 2018); *see also Taylor v. United Techs. Corp.*, No. 06-1494, 2008 WL 2333120, at *3 (D. Conn. June 3, 2008) ("Because a retirement plan is an aggregation of its participants' individual accounts, any loss to the Plan causes a loss to the Plan participants. Thus, plaintiffs fulfill standing based on their allegation that defendants breached their fiduciary duties by making decisions resulting in impaired returns or unreasonable fee charges and expenses.") (quotations and citations omitted); *Cryer v. Franklin Templeton Res., Inc.*, No. C 16-4265, 2017 WL 4023149, at *4 (N.D. Cal. July 26, 2017) ("[I]n determining constitutional standing, courts look not to individual funds but to the nature of the claims and allegations to determine whether the pleaded injury relates to the defendants management of the Plan as a whole.")(citations and quotations omitted).

[25] *Braden*, 588 F.3d at 593 ("Since [Plaintiff] has standing under Article III, we conclude that § 1132(a)(2) provides him a cause of action to seek relief for the entire Plan."); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) ("[T]he standing-related provisions of ERISA were not intended to limit a claimant's right to proceed under Rule 23 on behalf of all individuals affected by the [fiduciary's] challenged conduct, regardless of the representative's lack of participation in all the ERISA-governed plans involved; *Cassell v. Vanderbilt Univ.*, No. 16-2086, 2018 WL 5264640, at *3 (M.D. Tenn. Oct. 23, 2018) ("Courts have recognized that a plaintiff who is injured in his or her own plan assets – and thus has Article III standing – may proceed under Section 1132(a)(2) on behalf of the plan and other participants even if the relief sought sweeps beyond his own injury.") (citations omitted).

[26] *See McDonough v. Horizon Blue Cross Blue Shield of N.J., Inc.*, No. 09-571, 2011 WL 4455994, at *11 (D.N.J. Sept. 23, 2011) ("Horizon does not challenge McDonough's Article III standing or her own statutory standing to seek relief under ERISA. Rather, Horizon's 'standing' argument maintains that she cannot seek relief on behalf of individuals whose Horizon health plans differ from her own. This argument raises concerns over whether the putative class presents common questions of law or fact and whether the McDonough's claims are 'typical of the claims or defenses of the class,' concerns governed by Federal Rule of Civil Procedure 23(a)(2) and (3), respectively."); *see also Falberg v. Goldman Sachs Group, Inc.*, No. 19-9910, 2020 WL 3893285, at *8 (S.D.N.Y. July 9, 2020) ("[T]he argument that a named plaintiff only has constitutional standing where he shares an identical injury with the class improperly conflates the separate inquiries of Article III standing and Rule 23 class certification.").

[27] 140 S. Ct. at 1618-22.

[28] *Id.* at 1618-19.

[29] *Id.* at 1619.

[30] 923 F.3d at 331-34.

[31] *Id.* at 331.

[32] *Id.* at 344 n.10; *see also Daugherty v. Univ. of Chi.*, No. 17-3736, 2018 WL 1805646, at *2-3 (N.D. Ill. Jan. 10, 2018) ("Accepting as true the allegations that CRP incurs excessive administrative expenses and [d]efendant failed to monitor CRP's investment offerings, coupled with the allegations that [plaintiff] is a CRP participant and has suffered direct economic loss, the Court concludes that [plaintiff] sufficiently alleges as to Count I that he personally suffered an injury-in-fact in the form of a concrete and particularized 'direct economic loss' due to Defendant's alleged conduct.").

[33] 2020 WL 3893285, at *7-8. Consistent with this reasoning, courts dismiss ERISA claims regarding specific investment options where the plaintiffs fail to allege they invested in any of the criticized funds or paid any of the allegedly excessive fees. *See, e.g., Johnson v. Delta Air Lines, Inc.*, No. 17-2608, 2017 WL 10378320, at *1-2 (N.D. Ga. Dec. 12, 2017); *Wilcox v. Georgetown Univ.*, No. 18-422, 2019 WL 132281, at *9 (D.D.C. Jan. 8, 2019) (dismissing ERISA claim for lack of standing because "[p]laintiffs cannot allege an individual violation of ERISA as to the Vanguard funds, which is an investment option neither [p]laintiff selected.").

[34] 2020 WL 3893285, at *7-8.

[35] *Id.* at *7.

[36] *Id.* at *7.

[37] *Cassell*, 2018 WL 5264640, at *3; *Clark*, 2018 WL 1801946, at *3.

[38] *Cassell,* 2018 WL 5264640, at *3.

[39] *Id*.

[40] *Id.*

[41] 2018 WL 1801946, at *3-5.

[42] *Id.* at *3.

[43] *Id.*

[44] *Id.*

[45] ECF Doc. No. 18 at ¶¶ 23-40.

[46] *Id.* at ¶¶ 24-25.

---

[47] ECF Doc. No. 20-2 at ¶¶ 7-9.

[48] ECF Doc. No. 18 at ¶¶ 41-44.

[49] *Id.* at ¶ 41, 43.

[50] *See Cassell*, 2018 WL 5264640, at *3 ("Plaintiffs' allegations concerning record-keeping and administrative fees challenge the practices of [d]efendants, not specific funds.")

[51] ECF Doc. No. 18 at ¶¶ 45, 47.

[52] *Id.* at ¶¶ 45-50.   The Fiduciaries argue the Employees lack standing to assert claims about specific funds, such as the Fidelity Diversified International Class K Fund, in which they did not individually invest. ECF Doc. No. 20-1 at 9-10. We instead find Employees' claim to relate to the lack of a prudent evaluation process; the Fidelity fund is included only as an example of this imprudence. ECF Doc. No. 18 at ¶ 47 ("A *further indication* of Defendants' lack of a prudent investment process was their failure to identify and select collective trusts where available.") (emphasis added).

[53] ECF Doc. No. 18 at ¶ 45.

[54] *Id.* at ¶¶ 75-80.

[55] *Id.* at ¶ 80.

[56] ECF Doc. No. 20-1 at 8-10; ECF Doc. No. 33 at 1-6.

[57] ECF Doc. No. 33 at 4.

[58] *Thole*, 140 S. Ct. at 1618.

[59] *Id.* at 1622.

[60] No. 16-6794, 2017 WL 2930839, at *8 (C.D. Cal. Jan. 30, 2017).

[61] No. 16-1251, 2017 WL 2909714, at *5-7 (D. Conn. July 6, 2017).

[62] *Braden*, 588 F.3d at 593.