**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARY K. BOLEY**, *et al.* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  20-2644** |
| | : | |
| **UNIVERSAL HEALTH SERVICES,** | : | |
| **INC.**, *et al.* | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                     **March 8, 2021**

Three participants in their former employer's defined contribution plan are suing the plan's fiduciaries for allegedly breaching fiduciary duties owed to them under ERISA.  The three plan participants move to certify and represent a class of over 60,000 active participants.  The plan participants invested in different funds but focus their allegations on the fiduciaries allegedly retaining more expensive and underperforming funds despite the availability of lower cost funds, failing to monitor excessive record keeping and administrative fees and costs relative to similar plans, offering an excessively expensive menu of investment options, and failing to monitor their appointees.  We denied the fiduciaries' partial motion to dismiss four months ago.

The fiduciaries now oppose class certification arguing individualized defenses under ERISA section 404(c), potentially differing limitations periods, and the three participants' investments in different funds render the participants atypical and the defenses create issues unable to be resolved on a class-wide basis.  Following discovery, we find the three participants may proceed in representing a class of current and former plan participants. We agree with the persuasive reasoning from courts around the country rejecting the fiduciaries' arguments at this stage.  We grant the three participants' motion for class certification.

I.      **Background**

Universal Health Services, Inc. sponsors the Universal Health Services, Inc. Retirement Savings Plan ("Plan"), a defined contribution plan under which its qualified employees can invest a portion of their paycheck in one or more of thirty available investment options. Universal Health Services matches a portion of those contributions.[1] Universal Health Services and its Investment Committee appointed by the Board of Directors serve as the Plan's fiduciaries and administrators.[2] The fiduciaries must administer the Plan under Congress' mandates in the Employee Retirement Income Security Act of 1974 ("ERISA").[3]

The Plan had 60,018 active participants in 2018 with 41,872 holding active account balances.[4] The Plan had net assets totaling over $1.9 billion.[5] From June 5, 2014 through at least last month, the Plan offered participants a menu of thirty-seven investment options including some offered for a limited time.[6]

Former Universal Health Services employees Mary Boley, Kandie Sutter, and Phyllis Johnson ("Participants"), on behalf of the Plan and a purported class of similarly situated Plan participants and beneficiaries, sue Universal Health and its Investment Committee (the "Fiduciaries") under ERISA.  The Participants allege the Fiduciaries breached their fiduciary duties, including by: (1) retaining a suite of thirteen expensive and underperforming actively managed target date funds despite the availability of lower cost, passively managed index funds; (2) failing to monitor the excessive recordkeeping fees and administrative costs charged to Plan participants relative to other similarly large plans; (3) offering an excessively expensive menu of investment options; and (4) failing to monitor the Committee's appointees.[7] The Participants are either current or former Plan participants: Ms. Boley invests in the Fidelity Freedom K 2050 target date fund; Ms. Sutter invests in the Fidelity Freedom K 2025 target date fund, the Fidelity

Contrafund, the Fidelity Managed Income Portfolio II, the PIMCO Total Return Fund, and the MetWest Total Return Bond Fund; and Ms. Johnson invested in the Fidelity Freedom K 2045 target date fund.[8]

The Fiduciaries, largely relying on the Supreme Court's recent decision in *Thole v. U.S. Bank, N.A.*,[9] moved to partially dismiss the Participants' claims several months ago arguing they lacked constitutional standing to pursue claims relating to alleged losses in discrete investments they never selected.[10] We denied the Fiduciaries' motion after finding *Thole* to be of limited relevance in the context of defined contribution plans.[11] We found the Participants plead individualized injury – and therefore standing – with respect to each of their claims.[12] The Participants invested in one of the allegedly imprudent investments in target date funds[13] We further found their remaining claims involved the Fiduciaries' decision-making processes impacting all Plan participants.[14]

## II.   Analysis

The Participants move under Federal Rule of Civil Procedure 23(a) and 23(b)(1) to certify a class of "[a]ll participants and beneficiaries in [the Plan] at any time on or after June 5, 2014 to the present (the "Class Period"), including any beneficiary of a deceased person who was a participant in the Plan at any time during the Class Period."[15] The Participants must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (b)(2), or (b)(3). We may grant class certification if, "after a rigorous analysis," we are satisfied the Participants established each of the Rule's requirements by a preponderance of the evidence.[16]

### A.   The Class satisfies the Rule 23(a) requirements.

Under Rule 23(a), a class may be certified only if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the

class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."[17] The Participants argue they meet Rule 23(a) because the: (1) Plan consisted of over 60,000 participants during the class period; (2) same overarching questions of law and fact apply to all Plan participants' claims; (3) Participants suffered the same or similar injuries the Plan participants did; and (4) class counsel will adequately represent the interests of all Plan participants.[18] The Fiduciaries do not dispute the putative Class satisfies the numerosity and adequacy requirements but argue the Participants' claims are neither common nor typical of the claims of the putative Class for three reasons: (1) the claims of the Participants and putative Class are subject to individualized defenses available to fiduciaries under section 404(c) of ERISA; (2) individualized factual determinations will be required to determine whether the claims are untimely under ERISA's statute of limitations; and (3) the Participants only invested in a few of the investment options available to the Plan. We conclude the putative Class satisfies the requirements of Rule 23(a).

<strong>a.  The Class satisfies the numerosity requirement.</strong>

Rule 23(a)(1) requires a proposed Class be "so numerous that joinder of all members is impracticable."[19] While no threshold number is required, "a plaintiff in this circuit can generally satisfy Rule 23(a)(1)'s numerosity requirement by establishing 'that the potential number of plaintiffs exceeds 40.'"[20] The Plan's Form 5500 demonstrates it had 60,108 active participants as of 2018; 41,872 of those participants had active account balances.[21] The Fiduciaries do not dispute the putative Class satisfies the numerosity requirement. We agree it satisfies the requirement.

### b.     The Class satisfies the commonality requirement.

Rule 23(a)(2) requires a plaintiff demonstrate "there are questions of law or fact common to the class."[22] This requirement is satisfied if the proposed class members "share at least one question of fact or law with the grievances of the prospective class."[23] "A complaint's mere recital of questions that happen to be shared by class members is 'not sufficient to obtain class certification.'"[24] Commonality instead requires the plaintiff to demonstrate the class members "have suffered the same injury."[25]

The Participants satisfy the commonality requirement. They allege the Fiduciaries breached their duties to the Plan by, among other things, allowing excessive recordkeeping and administrative costs to be charged to Plan participants, retaining high-cost actively managed funds as investments despite the availability of low-cost index funds, and failing to have a prudent investment evaluation process.[26] All Plan participants chose from the same menu of investment options and paid the same administrative and recordkeeping fees. Many common questions of law and fact will drive the resolution of the litigation. The alleged Plan-wide conduct further impacted all Plan participants in a similar way, for example, through the payment of excessive fees.[27]

### c.     The Class satisfies the typicality requirement.

Rule 23(a)(3) requires a plaintiff demonstrate "the claims or defenses of the representative parties are typical of the claims or defenses of the class."[28] The typicality requirement "ensur[es] that the class representatives are sufficiently similar to the rest of the class . . . so that certifying those individuals to represent the class will be fair to the rest of the proposed class."[29] To determine whether the requirement has been met, we focus on "the similarity in the legal theory and legal claims; the similarity of the individual circumstances on

which those theories or claims are based; and the extent to which the proposed representative may face significant or atypical defenses to her claims."[30]

The similarity between the legal theory and legal claims asserted by the Participants and the proposed class "does not have to be perfect."[31] The claims must instead be "typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class."[32] There likewise need not be complete overlap in the individual factual circumstances underlying the legal claims but "just enough…so that maintaining a class action is reasonably economical and the interests of the other class members will be fairly and adequately protected in their absence."[33] Our Court of Appeals explained "even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories."[34]

In *Schering Plough*, our Court of Appeals explained "there is no doubt" a plan participant bringing ERISA breach of fiduciary duty claims on behalf of a plan met this threshold of legal and factual similarity.[35] Not only did the plan participant have legal claims identical to those of the proposed class, but the "basic factual circumstances supporting those claims – namely, defendants' conduct, [plaintiff's] participation in the [p]lan, and her investment in [the challenged stock] – are shared by the rest of the proposed class."[36] Judge Bartle similarly found the participant met the typicality requirement in an ERISA breach of fiduciary duty action despite the fact the sole plaintiff signed a release barring her recovery for part of the proposed class period.[37] Judge Bartle explained "[w]hile [plaintiff's] specific claim may occur over a shorter or different time period than other class members' claims, there is a 'strong similarity of legal theories' based on a single 'course of conduct.'"[38] Consistent with this reasoning, courts in

other circuits have found the typicality requirement satisfied in analogous ERISA cases challenging fiduciaries' conduct and decision-making processes.[39]

The Fiduciaries argue the Participants have not shown the requisite commonality and typicality for three reasons. They initially argue, relying heavily on the Court of Appeals for the Fifth Circuit's decision in *Langbecker v. Electric Data Systems Corporation*,[40] the "potential applicability of the individualized defense under Section 404(c) renders class certification inappropriate."[41] Section 404(c) provides an affirmative defense to fiduciaries under certain circumstances:

> (1)(A) In the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account (as determined under regulations of the Secretary)—
> …
> (ii) no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control,…"[42]

The Fiduciaries overstate the significance of *Langbecker*. The Court of Appeals for the Fifth Circuit vacated and remanded the district court's grant of class certification in an ERISA breach of fiduciary duty case brought on behalf of a plan because the district court, "[f]astening on the directive suit characterization" of the action, categorically found the section 404(c) defense inapplicable to a suit brought on behalf of a plan as a whole.[43] The court of appeals in *Langbecker* did not hold, as the Fiduciaries contend, the potential applicability of section 404(c) automatically defeats commonality or typicality, but instead found it improper that the lower court "incorrectly eliminated the Section 404(c) defense from its evaluation of the suitability…of class treatment" altogether.[44]

Since *Langbecker*, courts in our Circuit have consistently found the potential applicability of the section 404(c) defense does not defeat class certification because, if applicable, the

defense would defeat claims on a class-wide basis.[45]  In *Stanford*, for example, Judge Yohn rejected the argument section 404(c) precluded class certification in an ERISA case brought on behalf of a plan challenging specific transactions made by the fiduciaries.[46]  Judge Yohn first found this defense would not be unique to the class representative because "[i]t seems clear that the 404(c) defense, if applicable, would presumably work to defeat the claims of the class as a whole."[47]  Judge Yohn further found an analysis into 404(c) would not result in individualized inquiries explaining, "because the Section 404(c) defense, appears to apply, if at all, on a class-wide basis, adjudication of a Section 404(c) defense in a class action setting seems quite appropriate."[48]  In *Zhu v. Schering Plough Corporation*, Judge Hayden similarly rejected the theory a putative class could not be certified under Rule 23(b) due to the section 404(c) defense because, if the fiduciaries raised the defense, it would not be unique to the named plaintiffs and instead would apply to all class members, "given that it is clearly [d]efendants' position in this case that they bear no responsibility for the [p]lan losses at issue here in light of the control [p]lan participants exercised over the investment of their accounts in [the challenged ] stock."[49]

Other district courts have likewise concluded the potential applicability of the section 404(c) defense does not defeat commonality or typicality where the claims "focus on defendants' actions towards the [p]lan, and whether those actions were prudent," rather than on "individual investment patterns."[50]  In *Brieger v. Tellabs, Inc.*, Judge Kennelly found the section 404(c) defense did not render plan participants' claims regarding fiduciaries' allegedly imprudent management of a plan's investments atypical because the defense would not be unique to the claims but would apply to the plan as a whole.[51]  Judge Kennelly also discussed the limited significance of *Langbecker*, explaining it only suggested the availability of section 404(c) defenses "should have some bearing on class certification" and did not regard the possibility of

section 404(c) defenses "as [a] barrier[] to typicality in suits brought under Section 502(a)(2) of ERISA."[52] Judge Lungstrum in *In re YRC Worldwide Inc. ERISA Litigation* similarly "joined what appears to be every other court that has addressed this issue" in concluding the section 404(c) defense does not defeat typicality or class certification generally for breach of fiduciary duty claims alleging plan fiduciaries acted imprudently in managing the plan's investments.[53]

Consistent with several district court decisions after *Langbecker*, we also conclude the potential applicability of the section 404(c) defense does not defeat commonality or typicality. The claims here focus on Fiduciaries' plan-wide conduct rather than on the investment decisions of individual plan participants. The evidence required to establish the applicability of the section 404(c) defense likewise hinges on the Plan rather than on individual Plan participants. The defense would not be unique to the Participants or other Class members and instead would apply to defeat the claims on a class-wide basis.

The Fiduciaries next argue the individualized inquiry into whether the claims of the Participants or those of the putative Class are time-barred precludes class certification.[54] A plaintiff cannot bring suit under ERISA alleging breach of fiduciary duties after the earlier of (1) six years after the last action constituting a breach or violation or (2) three years after the earliest date on which the plaintiff had "actual knowledge" of the breach or violation.[55] The Fiduciaries contend some of the Participants' deposition testimony suggests receipt of Plan-related communications before filing suit.   The Fiduciaries then argue claims of some Participants or putative Class members could be barred by the statute of limitations.

Courts have rejected this theory under similar circumstances, finding statute of limitations issues to be common to putative class members and therefore capable of class-wide resolution. In *Henderson v. Emory University*, for example, Judge Pannell, Jr. rejected the

fiduciaries' theory individualized statute of limitations inquiries defeated commonality based on proof some named plaintiffs received disclosures with plan-related information over three years before they filed suit.[56] Judge Pannell, Jr. found instead the statute of limitations presented common inquiries, for example, "whether the disclosures that the [fiduciaries] point to – which appear to be materials made available to the [p]lans' participants generally – did, in fact, provide a given plaintiff or class member with 'actual knowledge' of the claims."[57] Judge Pannell further explained even assuming the statute of limitations raised some individualized inquiries, it "does not negate the many other common issues" present in cases alleging fiduciaries breached their duties on a plan-wide basis.[58] Judge Eagles in *Clark v. Duke University* similarly found statute of limitations inquiries could be common to putative class members based on plan-wide communications providing actual knowledge of alleged breaches of fiduciary duties.[59] Even if individual statute of limitations questions existed, they could only limit damages rather than preclude them entirely and could not outweigh the "abundance of common legal and factual questions" presented by the claims.[60]

Since *Henderson* and *Clark*, however, the Supreme Court in *Intel Corporation Investment Policy Committee v. Sulyma* clarified the "actual knowledge" needed to trigger the statute of limitations under Section 1113 of ERISA.[61] In *Sulyma*, the Court held actual knowledge is not the same as constructive knowledge and therefore "requires more than evidence of disclosure alone."[62] The Court explained disclosure of information to the plaintiff "is no doubt *relevant* in judging whether he gained knowledge of that information," but to meet the actual knowledge standard, "the plaintiff must in fact have become aware of that information."[63] We are not yet aware of any decisions applying *Sulyma* in the class certification context.

We conclude the Fiduciaries cannot defeat class certification based solely on their speculative theory individualized statute of limitations issues *may* arise as to the Participants or putative Class members.[64] The Fiduciaries establish only the Participants received or had access to Plan-wide communications.[65] This is insufficient under *Sulyma* to demonstrate statute of limitations issues exist or they will become a major focus of the litigation. Even if such issues do arise, they likely cannot defeat the many common legal and factual issues described above underlying the Participants' claims based on plan-wide conduct.

The Fiduciaries finally argue the Participants' claims are atypical of the claims of putative Class members because the Participants only invested in a few of the many investment options available to Plan participants.[66] The Fiduciaries' argument misses the mark. The focus of the Participants' claims is on the Fiduciaries' conduct as to all Plan participants rather than about the individual investment choices made by Participants and putative Class members. As we explained in our decision denying the Fiduciaries' motion for partial dismissal, the Participants' claims primarily involve allegedly imprudent decision-making processes as to the Plan as a whole. The Participants' claims, challenging uniform conduct across the Plan, are typical of the claims of putative Class members. The varying choices of the Participants and putative Class members may result in varying levels of recovery, but that inquiry is beyond the scope of class certification.[67]

The putative Class meets the commonality and typicality requirements of Rule 23(a).

### d. Class counsel and the Participants will adequately represent the Class members.

Rule 23(a)(4) requires class representatives "will fairly and adequately protect the interests of the class."[68] "Class members are adequately represented if class counsel is qualified to represent the class and the interests of the class representatives are not in conflict with the

interests of the class members."[69] The Fiduciaries do not dispute the qualifications of Class

counsel. Mark Gyandoh, James Miller, and their respective law firms Capozzi Adler, P.C. and

Shepherd Finkelman Miller & Shah, LLP have competently represented the Participants in this

case thus far by actively engaging in motions practice and discovery. They further have

extensive experience in litigating ERISA class actions in this Circuit and throughout the

country.[70] As discussed in our analysis of typicality, the Participants' interests and incentives

align with those of the proposed Class members. The Participants satisfy this requirement.

**B.      The Class satisfies Rule 23(b)(1).**

Having determined the proposed Class meets all the Rule 23(a) requirements, we next

determine whether the proposed Class falls into one of the categories outlined in Rule 23(b). The

Participants seek class certification under Rule 23(b)(1), which allows us to certify a class if

"prosecuting separate actions by or against individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that
> would establish incompatible standards of conduct for the party opposing the class;
> or
>
> (B) adjudications with respect to individual class members that, as a practical matter,
> would be dispositive of the interests of the other members not parties to the
> individual adjudications or would substantially impair or impede their ability to
> protect their interests."[71]

Both types of class actions under Rule 23(b)(1) are "designed to prevent prejudice to the parties

arising from multiple potential suits involving the same subject matter."[72] Our Court of Appeals

explained breach of fiduciary duty claims brought under section 502(a)(2), like those asserted

here, are "paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1)

class."[73]

The Participants argue certification under Rule 23(b)(1) is proper because the focus of the

litigation is on the Fiduciaries' uniform treatment of Plan participants and allowing separate

actions to proceed would create inconsistent standards for the Fiduciaries and would substantially impair the interests of other class members.[74] The Fiduciaries argue, relying on the Supreme Court's decision in *Wal-Mart Stores v. Dukes*,[75] certification under Rule 23(b)(1) is improper because the Participants and putative Class seek individual monetary relief.[76] We conclude *Dukes* does not apply to these facts and class certification is proper under Rule 23(b)(1).

The Fiduciaries overstate *Dukes* by arguing all classes seeking individualized monetary claims can only be brought under Rule 23(b)(3). In *Dukes*, the Supreme Court held putative class members' claims for backpay in a Title VII case had been improperly certified under Rule 23(b)(2) – not Rule 23(b)(1) – because Rule 23(b)(2) "applies only when a single injunction or declaratory judgment would provide relief to each member of the class" and it consequently "does not authorize class certification when each class member would be entitled to an individualized award of monetary relief."[77] The Court held certification under Rule 23(b)(3) to be proper because "the procedural protections attending the [Rule 23](b)(3) class….are missing from [Rule 23](b)(2)."[78]

Even assuming the Court's holding in *Dukes* extended to class certification under Rule 23(b)(1), we find it inapplicable because the Participants and putative Class members here do not seek individualized monetary relief. Courts since *Dukes* have declined to extend its holding to ERISA claims where, as here, recovery is being sought on behalf of a plan rather than at the individual level. In *Henderson*, for example, Judge Pannell found class certification under Rule 23(b)(1) of ERISA breach of fiduciary duty claims because regardless of whether the logic of *Dukes* extended to Rule 23(b)(1), "plaintiffs do not seek 'individualized monetary damages,' but recovery for losses to the [p]lans as a whole."[79] In *Jacobs v. Verizon Communications*, Judge

Gardephe recently certified a Rule 23(b)(1) class in an analogous ERISA case brought on behalf of a plan, and in doing so, expressly rejected defendants' objection certification was improper because the class members sought individualized damages.[80] In the report and recommendation – adopted by Judge Gardephe in its entirety – Magistrate Judge Lehrburger explained:

> These arguments have been floated before in other similar cases and soundly rejected. The principal flaw in [d]efendants' argument is a misapprehension of the nature of an ERISA class action case such as this one. Regardless whether damages and/or injunctive relief are sought, the named [p]laintiff brings suit in a derivative capacity seeking relief on behalf of the [p]lan….[T]he fact that damages awarded to the [p]lan may provide plaintiffs with an indirect benefit does not convert their derivative suit into an action for individual relief as [d]efendants seek to portray it.[81]

We agree with the reasoning in *Henderson* and *Jacobs* under analogous circumstances. The Participants seek, in addition to injunctive and declaratory relief, compensatory damages for losses to the Plan. If any damages are awarded, they would belong to the Plan in the first instance rather than to Plan participants. The fact the Plan would subsequently distribute damages to Plan participants does not convert the lawsuit into one where putative Class members are directly seeking individualized monetary damages, as in *Dukes*.

Having determined we are not barred from certifying the Class under Rule 23(b)(1), we now must consider whether the putative Class otherwise meets the requirements of the Rule.

### 1.     Certification is appropriate under Rule 23(b)(1)(A).

Our analysis under Rule 23(b)(1)(A) focuses on whether allowing separate actions would create "inconsistent orders" or "unworkable standards" for the party opposing the class.[82] Certification under Rule 23(b)(1)(A) is appropriate "in cases where the party is obliged by law to treat the members of the class alike…or where the party must treat all alike as a matter of practical necessity."[83] Courts have certified classes under Rule 23(b)(1)(A) in analogous cases because "the nature of a defined contribution plan means a fiduciary must treat participants

uniformly" and  allowing individual actions to proceed could subject the fiduciaries to differing standards of duty.[84] In *Stanford*, for example, Judge Yohn found certification appropriate under Rule 23(b)(1)(A) for an ERISA breach of fiduciary duty action due to the potential for inconsistent adjudications:

> When raising a plan-wide claim, a plaintiff is purs[u]ing a claim on behalf of the *entire* plan, which necessarily includes discrete accounts within the plan. Accordingly, if a court entertaining an individual account claim were to reach a different conclusion from a court entertaining a plan-wide claim, the fiduciaries would be left with incompatible orders concerning the same account.[85]

The breach of fiduciary duty claims alleged here raise similar concerns.  The Participants – on behalf of the Plan – generally allege the Fiduciaries mismanaged the Plan's investments, failed to monitor the decision-making process regarding investments, and allowed participants to be charged excessive fees. If we allowed separate actions to proceed, the Fiduciaries could be subject to varying and incompatible standards of conduct and liability. Class certification is appropriate under Rule 23(b)(1)(A).

### 2.    Certification is also appropriate under Rule 23(b)(1)(B).

The Advisory Committee Notes to Rule 23 confirm certification under Rule 23(b)(1)(B) is typically appropriate in "an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust."[86] In *Schering Plough*, our Court of Appeals explained the requirement of Rule 23(b)(1)(B) would "clearly" be met in ERISA breach of fiduciary duty claims brought on behalf of a plan because the claims "are based on defendants' conduct, not…on unique facts and individual relationships" and "[plaintiff's] proofs regarding defendants' conduct will, as a practical matter, significantly impact the claims of other [p]lan participants and of employees

15

who invested in the [challenged] [f]und."[87] Judges in this District and elsewhere have accordingly certified classes under Rule 23(b)(1)(B) in analogous ERISA breach of fiduciary duty actions brought on behalf of plans.[88]

Our Court of Appeals' reasoning in *Schering Plough* applies with equal force here. The Participants' claims focus on the Fiduciaries' conduct in administering the Plan – which is identical for all Plan participants – rather than the unique circumstances of each Plan participant. Allowing individual participants to pursue separate actions would result in outcomes likely to be dispositive of the interests of other Plan participants.

## III.   Conclusion

The Participants established their proposed Class meets the requirements of Rules 23(a) and 23(b)(1) warranting class certification.

---

[1]  P000129-30. Under our Policies, we require the parties submit an Appendix supporting a motion for class certification. Ms. Boley, Ms. Sutter, and Ms. Johnson submitted an Appendix at ECF Doc. No. 52, bates stamped P000001-332. Universal Health Services and its Investment Committee submitted an Appendix at ECF Doc. No. 53-1, bates stamped Defs.' Appx 333-961.

[2]  P000139; P000292-95.

[3]  P000139.

[4]  P000002.

[5]  P000025.

[6]  Defs.' Appx 339.

[7]  ECF Doc. No. 18.

[8]  P000298 ¶ 5; P000301 ¶ 5; P000304 ¶ 5; Defs.' Appx. 339.

[9]  140 S. Ct. 1615 (2020).

[10]  ECF Doc. Nos. 20, 30, 33.

[11] *Boley v. Universal Health Servs., Inc.*, No. 20-2644, 2020 WL 6381395, at *2-7 (E.D. Pa. Oct. 30, 2020).

[12] *Id.*

[13] *Id.* at *5.

[14] *Id.*

[15] ECF Doc. No. 52 at 1.

[16] *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 183-84 (3d Cir. 2019) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011)).

[17] Fed. R. Civ. P. 23(a)(1)-(4).

[18] ECF Doc. No. 52 at 15-24.

[19] Fed. R. Civ. P. 23(a)(1).

[20] *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 486 (3d Cir. 2018) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)).

[21] P000001-02.

[22] Fed. R. Civ. P. 23(a)(2).

[23] *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)).

[24] *Mielo*, 897 F.3d at 487 (quoting *Dukes*, 564 U.S. at 349-50).

[25] *Id.* (quoting *Dukes*, 564 U.S. at 349-50)); *see also Ferreras*, 946 F.3d at 185 (commonality requires a plaintiff demonstrate "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation") (quoting *Dukes*, 564 U.S. at 350) (emphasis in original).

[26] ECF Doc. No. 18 ¶¶ 22-50.

[27] *See Schering Plough*, 589 F.3d at 596-97 (finding commonality requirement met where named plaintiff and proposed class shared many common questions including "whether defendants were fiduciaries, whether defendants breached their duties to the Plan by failing to conduct an appropriate investigation into the continued investment in Schering-Plough stock, … whether the defendants in supervisory roles failed in their monitoring of the Investment Committee Defendants; whether defendants failed to retain independent fiduciaries; and whether the Plan suffered losses as a result of defendants' breaches"); *see also Stanford v. Flomex L.P.*, 263

F.R.D. 156, 166 (E.D. Pa. 2009) ("As plaintiff correctly points out, because the focus of each count is squarely on the behavior of the fiduciary defendants, common questions of law and fact exist as to each count regarding whether, and to what extent, defendants breached any fiduciary duty or duties owed to plaintiff and members of the prospective class.").

[28] Fed. R. Civ. P. 23(a)(3).

[29] *Schering Plough,* 589 F.3d at 597.

[30] *Id.* at 597-98.

[31] *Id.* at 598.

[32] *Id.* (quoting *Beck v. Maximus*, 457 F.3d 291, 295-96 (3d Cir. 2006)).

[33] *Id.* (citing *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182-85 (3d Cir. 2001)).

[34] *Baby Neal*, 43 F.3d at 58; *Stanford*, 263 F.R.D. at 167 ("Typicality will generally be found to exist when the named plaintiffs and the proposed class members 'challenge[] the same unlawful conduct.'") (quoting *Baby Neal*, 43 F.3d at 58)).

[35] 589 F.3d at 599.

[36] *Id.*

[37] *Moore v. Comcast Corp.*, 268 F.R.D. 530, 535-538 (E.D. Pa. 2010).

[38] *Id.* at 538 (quoting *Baby Neal*, 43 F.3d at 58)).

[39] *See, e.g., Clark v. Duke Univ.*, No. 16-1044, 2018 WL 1801946, at *5-7 (M.D.N.C. Apr. 13, 2018) (finding typicality requirement satisfied where "each named plaintiff's claim and each class member's claim is based on the same events and legal theory—a breach of fiduciary duty stemming from the defendants' alleged disloyal and imprudent process for selecting, administering, and monitoring the Plan's recordkeepers and investments. The same is true of the remedial theory, which is identical for the named plaintiffs and the class members.") (internal citations omitted); *Henderson v. Emory Univ.*, No. 16-2920, 2018 WL 6332343, at *6 (N.D. Ga. Sept. 13, 2018)) ("The plaintiffs have met their burden as to typicality. The class members' claims are based on the same events and legal theories—breach of fiduciary duty in managing and monitoring the Plans. Proof of the defendants' alleged misconduct and the alleged harm would be the same for each class member rather than turning on individual circumstances.").

[40] 476 F.3d 299 (5th Cir. 2007).

[41] ECF Doc. No. 53 at 12-19.

---

[42] 29 U.S.C. § 1104(a).

[43] 476 F. 3d at 305, 310-13.

[44] *Id.* at 313.

[45] Our Court of Appeals' decision in *In re Unisys Savings Plan Litig.*, 74 F.3d 420 (3d Cir. 1996) highlights this point. *See* ECF Doc. No. 53 at 15.  In *Unisys*, a class of plan participants appealed the district court's grant of summary judgment to the defendant on various issues, including the applicability Section 404(c) defense.  74 F.3d at 443-48. Our Court of Appeals vacated the district court's grant of summary judgment on this issue because it found the "record is inadequately developed as to critical facts and demonstrates the existence of disputed material facts as to whether the [p]lans fall within the statute's coverage." *Id.* at 446. The evidence our Court of Appeals found to be missing involved the plans rather than individual plan participants. *See id.* at 446-48. For example, the court found the defendant failed to provide sufficient factual information regarding whether (1) the plans gave participants a wide array of investments; (2) the information defendant disseminated to plan participants regarding their investments was sufficient; (3) the plans gave their participants sufficient ability to make contributions and transfers. *See id.* This underscores the applicability of the section 404(c) defense is capable of class-wide resolution and does not turn on individual plan participants' investment behavior.

[46] 263 F.R.D. at 170-71.

[47] *Id.* at 170 (citations and quotations omitted).

[48] *Id.* at 170-71 (further noting that "courts have recognized that there is a problematic inconsistency in contending both that 1) [d]efendants have a viable § 404(c) defense, which would defeat the claims of the entire class; and 2) application of that defense is highly individualized") (citations and quotations omitted).

[49] No. 03-1204, 2008 WL 4510039, at *4-5 (D.N.J. Sept. 30, 2008) (quotations and citations omitted).

[50] *See Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 352 (N.D. Ill. 2007); *George v. Kraft Foods Global, Inc.*, 251 F.R.D. 338, 349-50 (N.D. Ill. 2008) ("It is simply not the case that the [c]ourt will need to analyze whether *each and every one* of the 40,000 putative class members had sufficient control over his or her [p]lan investments in order to decide whether defendants' Section 404(c) defense ultimately has merit….The majority of the case law supports this view.") (internal citations and quotations omitted) (emphasis in original); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 109-10 (N.D. Cal. 2008) (rejecting argument that the availability of the Section 404(c) defense defeated commonality because "the existence of a Section 404(c) affirmative defense is an issue shared by many members of the class" and finding fiduciaries' reliance on *Langbecker* to be "misplaced").

[51] *Id.* at 352-53.

[52] *Id.*

[53] No. 09-2593, 2011 WL 1303367, at *6 (D. Kan. Apr. 6, 2011) ("[I]t appears that every district court to have addressed [the Section 404(c)] issue since *Langbecker* has held that the assertion of a Section 404(c) defense does not defeat typicality (or otherwise bar certification), in large part because the defense is not unique to the claims of certain plaintiffs or class members but presumably would apply to all [p]lan participants.") (collecting cases).

[54] ECF Doc. No. 53 at 20-21.

[55] 29 U.S.C. § 1113.

[56] No. 16-2920, 2018 WL 6332343, at *5 (N.D. Ga. Sept. 13, 2018).

[57] *Id.*

[58] *Id.*

[59] No. 16-1044, 2018 WL 1801946, at *5-7 (M.D.N.C. Apr. 13, 2018).

[60] *Id.* at *6.

[61] 140 S. Ct. 768, 776-77 (2020).

[62] *Id.* at 777.

[63] *Id.* (emphasis in original).

[64] *See Ramos v. Banner Health*, 325 F.R.D. 382, 390-91 (D. Colo. 2018) ("[B]etween the weakness of [d]efendants' factual record as to specifically what [named plaintiff] knew, and when, and the uncertainty of the legal standard, [d]efendants have *at most* shown there is a remaining dispute over this defense....The *potential* time-bar issue raised by [d]efendants is not enough to defeat class certification, even as to [named plaintiff] individually, much less to defeat certification overall.") (emphasis in original); *see also Henderson*, 2018 WL 6332343 at *6 ("While the defendants also hypothesize that the putative class members may have had 'actual knowledge' of their claims from other sources, that assertion is based on mere speculation and therefore cannot defeat certification.").

[65] ECF Doc. No. 53 at 20 (citing deposition testimony of Ms. Boley, Ms. Sutter, and Ms. Johnson explaining they understood they had access to Plan-related information through a website or mobile app and they received communications in the mail).

[66] ECF Doc. No. 53 at 21-22. We need not address the Fiduciaries' argument the Participants lack Article III standing to pursue claims regarding the particular funds they did not personally invest in because we addressed – and rejected – this argument at length in denying the

Fiduciaries' motion to partially dismiss the Participants' claims. *See Boley*, 2020 WL 6381395 at *2-6.

[67] *See Ramos*, 325 F.R.D. at 391-93 (finding typicality requirement met despite differing investment choices because the nature of plaintiffs' claims "allege an overall failed process in selecting, reviewing, and monitoring investments, rather than fiduciary failures particular to any individual fund or funds"); *Kanawi*, 254 F.R.D. at 110 (rejecting argument that how any recovery will be returned to plan participants would make class certification inappropriate because participants chose differing investment options because "the common focus is on the conduct of [d]efendants….Plaintiffs' claims do not focus on injuries caused to each individual account, but rather on how the [d]efendants' conduct affected the pool of assets that make up" the plan's assets; *Henderson*, 2018 WL 6332343 at *9 (finding no intra-class conflict created by plan participants' individual investment strategies because "this does not affect the core legal interest at stake for this theory of liability – whether including those investments in the [p]lans amounts to a breach of fiduciary duty in violation of ERISA requirements."); *Munro v. Univ. of S. Cal.*, No. 16-06191, 2019 WL 7842551 at *4 ("That not all participants used the same recordkeeping services, invested in the same funds, or paid more than $30 annually for recordkeeping services does not defeat commonality. As other courts considering cases involving university defined contribution plans have held, focusing on the individuals who benefitted from the allegedly imprudent investments does not affect the overarching legal issue of whether such investments constituted a breach of defendants' fiduciary duty.") (internal quotations omitted) (collecting cases).

[68] Fed. R. Civ. P. 23(a)(4).

[69] *Galt v. Eagleville Hosp.,* 310 F. Supp. 3d 483, 491 (E.D. Pa. Apr. 19, 2018) (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004); *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 800 (3d Cir.1995)).

[70] P000323-24; P000329-31.

[71] Fed. R. Civ. P. 23(b)(1).

[72] *Stanford v. Flomex L.P.*, 263 F.R.D. 156, 173 (E.D. Pa. 2009).

[73] *Schering Plough*, 589 F.3d at 604 (collecting cases); *see also Kanawi*, 254 F.R.D. at 111 ("Most ERISA class action cases are certified under Rule 23(b)(1).").

[74] ECF Doc. No. 52-1 at 24-27.

[75] 564 U.S. 338 (2011).

[76] ECF Doc. No. 53 at 24-26.

[77] 564 U.S. at 360-61.

[78] *Id.* at 363.

[79] 2018 WL 6332343 at \*10; *see also Clark*, 2018 WL 1801946 at \*10 (certifying class under Rule 23(b)(1) and finding *Dukes* to be inapplicable because "plaintiffs are not requesting individualized monetary claims but rather are seeking relief to the [p]lan as a whole"); *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 575-76 (D. Minn. 2014) (finding class certification under Rule 23(b)(1) to be appropriate for ERISA breach of fiduciary duty claims brought on behalf of a plan because "the claims are made on behalf of the [p]lan rather than individual participants" and fiduciaries did "not demonstrate[] the existence of a blanket prohibition on Rule 23(b)(1) class certification of actions in which monetary relief is sought").

[80] No. 16-01082, 2020 WL 4601243, at \*13-14 (S.D.N.Y. June 1, 2020).

[81] *Id.* at 14.

[82] *See Stanford*, 263 F.R.D. at 173.

[83] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (citations and quotations omitted).

[84] *Munro*, 2019 WL 7842551, at \*8-10 (certifying class under Rule 23(b)(1)(A) in ERISA breach of fiduciary duty action); *Clark*, 2018 WL 1801946 at \*9-10 (finding certification of class asserting ERISA breach of fiduciary duty claims proper under Rule 23(b)(1)(A) because "[s]eparate actions over whether the defendants' investment procedures and management methods violated their fiduciary duties could result in decisions that place incompatible requirements on the defendants in terms of either the losses that defendants would have to pay back to the [p]lan, or the requirements for obtaining future [p]lan services, or both").

[85] *Stanford*, 263 F.R.D. at 173.

[86] Fed. R. Civ. P. 23 advisory committee notes.

[87] *Schering Plough*, 589 F.3d at 604.

[88] *See, e.g., Stanford*, 263 F.R.D. at 156 (finding class certification under Rule 23(b)(1)(B) appropriate in ERISA breach of fiduciary duty action because "a participant's individual account is still a part of the [p]lan, and, therefore, an adjudication as to the [p]lan will likewise impact a participant's individual accounts"); *Moore*, 268 F.R.D. at 538 (certifying class under Rule 23(b)(1)(B) in ERISA breach of fiduciary duty action for a defined contribution plan); *Clark*, 2018 WL 1801946 at \*9 (finding Rule 23(b)(1)(B) certification proper in ERISA breach of fiduciary duty action "because the claims concern the same actions in managing the [p]lan and because damages are owed to the [p]lan as a whole and not individual plaintiffs").