**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARY K. BOLEY, *et al.*, | Case No. 2:20-CV-02644-MAK |
| Plaintiffs, | |
| v. | |
| UNIVERSAL HEALTH SERVICES, INC., *et al.*, | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE
THE PROPOSED EXPERT TESTIMONY OF KELLY DRISCOLL**

## TABLE OF CONTENTS

Table of Authorities ................................................................................................. ii

I.      INTRODUCTION ............................................................................................. 1

II.     BACKGROUND ............................................................................................... 4

        A.      Plaintiffs' Claims ................................................................................... 4

        B.      Ms. Driscoll's Opinions ......................................................................... 4

        C.      Defendants' Deposition of Ms. Driscoll ................................................ 6

III.    ARGUMENT ..................................................................................................... 7

        A.      Standard of Review ................................................................................ 7

        B.      Objective Prudence ................................................................................ 8

        C.      Ms. Driscoll is Qualified to Offer each of Her Opinions ..................... 11

        D.      Ms. Driscoll's Opinions are Reliable ................................................... 12

                1.      Ms. Driscoll's Opinions Concerning Defendants' Fiduciary Process
                        are Reliable ............................................................................... 13

                2.      Ms. Driscoll's Opinions Bearing on the Substantive Prudence of the
                        Challenged Investments are Reliable ......................................... 15

        E.      Ms. Driscoll's Opinions are Helpful .................................................... 19

IV.     CONCLUSION ................................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alco Indus., Inc. v. Wachovia Corp.*,
  527 F. Supp. 2d 399 (E.D. Pa. 2007) ........................................................................ 7

*Blackmon v. Zachry Holdings, Inc.*,
  2021 WL 2190907 (W.D. Tex. Apr. 22, 2021) ......................................................... 10

*Clark v. Richman*,
  339 F. Supp. 2d 631 (M.D. Pa. 2004) ........................................................................ 8

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ................................................................................................. 1, 8

*Gannon v. U.S.*,
  2007 WL 2071878 (E.D. Pa. July 17, 2007) .............................................................. 8

*Garthwait v. Eversource Energy Co.*,
  2022 WL 3019633 (D. Conn. July 29, 2022) ........................................................... 10

*Hans v. Tharaldson*,
  2011 WL 6937598 (D.N.D. Sept. 23, 2011) ............................................................ 20

*In re Biogen, Inc. ERISA Litig.*,
  2021 WL 3116331 (D. Mass. July 22, 2021) ........................................................... 10

*In re LinkedIn ERISA Litig.*,
  2021 WL 5331448 (N.D. Cal. Nov. 16, 2021) ......................................................... 10

*In re MedStar ERISA Litig.*,
  2021 WL 391701 (D. Md. Feb. 4, 2021) .................................................................. 10

*In re Omnicom ERISA Litig.*,
  2021 WL 3292487 (S.D.N.Y. Aug. 2, 2021) ........................................................... 10

*In re Paoli R.R. Yard PCB Litig.*,
  35 F.3d 717 (3d Cir.1994) ..................................................................................... 7, 12

*In re Prime Healthcare ERISA Litig.*,
  2021 WL 3076649 (C.D. Cal. July 16, 2021) .......................................................... 10

*In re Puda Coal Sec. Inc., Litig.*,
  30 F. Supp. 3d 230 (S.D.N.Y.) ................................................................................. 14

*In re Quest Diagnostics ERISA Litig.*,
 2021 WL 1783274 (D.N.J. May 4, 2021) ....................................................... 10

*In re Salem*,
 465 F.3d 767 (7th Cir. 2006) ......................................................................... 8

*In re TMI Litig.*,
 193 F.3d 613 (3d Cir. 1999) .............................................................. 18, 19, 20

*In re Unisys Sav. Plan Litig.*,
 74 F.3d 420 (3d Cir. 1996) ............................................................................ 9

*In re Unisys Savings Plan Litig.*,
 173 F.3d 145 (3d Cir. 1999) ........................................................................... 8

*Jones v. Coca-Cola Consolidated, Inc.*,
 2021 WL 1226551 (W.D.N.C. Mar. 31, 2021) ............................................. 10

*Kenney v. Watts Regulator Co.*,
 512 F. Supp. 3d 565 (E.D. Pa. 2021) ............................................................ 7

*Kumho Tire Co. v. Carmichael*,
 526 U.S. 137 (1999) ..................................................................................... 12

*Meltzer v. Graham*,
 112 F.3d 207 (5th Cir. 1997) ......................................................................... 9

*Oddi v. Ford Motor Co.*,
 234 F.3d 136 (3d Cir. 2000) ......................................................................... 17

*Pledger v. Reliance Tr. Co.*,
 2019 WL 44439606 (N.D. Ga. Feb. 25, 2019) ............................................. 20

*ProtoComm Corp. v. Novell Advanced Servs., Inc.*,
 171 F. Supp. 2d 473 (E.D. Pa. 2001) .......................................................... 12

*Ramos v. BannerHealth*,
 461 F. Supp. 3d 1067 (D. Colo. 2020) ........................................................ 10

*Renfro v. Unisys Corp.*,
 671 F.3d 314 (3d Cir. 2011) ........................................................................... 8

*Sacerdote v. New York Univ.*,
 9 F.4th 95 (2d Cir. 2022) ............................................................................... 9

*Scalia v. Reliance Tr. Co.*,
 2021 WL 795270 (D. Minn. Mar. 2, 2021) ................................................... 20

*Smith v. CommonSpiritHealth,*
 37 F.4th 1160 (6th Cir. 2022) ............................................................................................ 9, 17

*Thompson v. Avondale Indus., Inc.,*
 2003 WL 359932 (E.D. La. Feb. 14, 2003) ............................................................................ 11

**Statutes**

29 U.S.C. § 1001 ...................................................................................................................... 1

29 U.S.C. § 1104 ...................................................................................................................... 4

29 U.S.C. § 1105 ...................................................................................................................... 4

**Rules**

Fed.R.Civ.P. 12(f) .................................................................................................................... 2

Federal Rule of Evidence 702 ............................................................................................. 1, 3, 7

Federal Rule of Evidence 703 .................................................................................................. 18

Plaintiffs, Mary K. Boley, Kandie Sutter, and Phyllis Johnson (collectively, "Plaintiffs"), respectfully submit this Memorandum of Law in Opposition to Defendants' Motion to Exclude the Proposed Expert Testimony of Kelly Driscoll (ECF No. 100, "Motion" and the supporting Memorandum, ECF No. 100-1, "Memorandum").  Since Ms. Driscoll's opinions are relevant, reliable, and helpful to the trier of fact in this action asserting breach of fiduciary duty and related claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, Ms. Driscoll's testimony is admissible under Federal Rule of Evidence 702 and the Motion should be denied.

## I.    INTRODUCTION

Despite paying lip service to the Court's admonition that the parties should not file dispositive motions simply to educate the Court in advance of a trial in which it will sit as trier of fact, Defendants filed their present Motion in a transparent effort to smuggle in arguments that do not bear on the admissibility of Plaintiffs' expert, Ms. Driscoll, but prematurely and inappropriately go to the merits of Plaintiffs ERISA claims.  Moreover, Defendants' Motion is replete with misrepresentations and distortions of the record, and peddles untruthful assertions about the scope of the opinions offered by Plaintiffs' experts, an unrelated complaint filed by Plaintiffs' counsel on behalf of other parties in a different lawsuit, and inapposite decisions by other courts.  Defendants' subterfuge and innuendo do not bear on the Court's review of Ms. Driscoll's opinions under Rule 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and their efforts should not be countenanced.

First, Defendants completely refuse to engage with the substance of Ms. Driscoll's opinion.  Instead, they mischaracterize Ms. Driscoll's opinion in an effort to avoid the uncomfortable reality that Ms. Driscoll's opinions will assist the trier of fact in finding that Defendants' process fell well below the applicable standard of care and resulted in the retention

of imprudent investments in the Plan.  Simply put, Ms. Driscoll offers reliable and helpful

opinions concerning Defendants' deficient fiduciary process and the resulting retention of the

Fidelity Freedom Funds and other excessively priced investment options in the Plan.  For all of

Defendants' handwringing, Ms. Driscoll does not claim to (nor could she appropriately) opine on

the ultimate issue of the prudence of the Fidelity Freedom Funds, as such a determination is

within the province of the Court.  Ms. Driscoll does, however, offer evidence that will assist the

trier of fact in its procedural and substantive prudence determinations.[1]

Second, Defendants apparently seek to distract the Court with a matter that is neither

before the Court nor relevant to the Court's present inquiry.[2]  Specifically, Defendants argue that

a complaint in a different lawsuit filed by Plaintiffs' counsel involving a *different* retirement

plan, *different* investments, and a *different* time period somehow articulates a standard that is

inconsistent with Plaintiffs' positions in this litigation.  But the allegations cited (and many more

that are self-servingly omitted) by Defendants are entirely consistent with Plaintiffs' positions

throughout this litigation and Ms. Driscoll's opinions.

Third, Defendants argue that Ms. Driscoll's testimony is unreliable.  They misleadingly

argue that Ms. Driscoll's opinions are not grounded in sufficient finance and economics

principles, even though they plainly are.  In addition, Defendants assert that they were

---

[1] Citing to a single cherry-picked line of deposition testimony, Defendants incorrectly assert that another expert proffered by Plaintiffs, Dr. Gerald W. Buetow, Jr., does not offer any evidence going to the so-called "objective prudence" inquiry.  Any honest reading of Dr. Buetow's report and full deposition testimony confirms that Dr. Buetow also offers opinions that will assist the trier of fact in making determinations concerning the objective prudence of the Fidelity Freedom Funds, but does not offer an opinion on the ultimate issue of the substance of the challenged investments.  Dr. Buetow's report and deposition transcript are attached, respectively, as Exs. "A" and "B" to the accompanying Declaration of Alec J. Berin.  Notably, Defendants do not challenge the admissibility of Dr. Buetow's opinions.

[2] The Court would act well within its discretion to strike such argument as scandalous, immaterial and impertinent under Fed.R.Civ.P. 12(f).

supposedly unable to sufficiently test Ms. Driscoll's opinions because, during her deposition, she cited to a confidentiality agreement with her former employer, State Street Corporation ("State Street").  This argument is disingenuous, at best, as Defendants made no legitimate effort before or after Ms. Driscoll's deposition to obtain the information in which they now feign interest. Further, Defendants ignore that Ms. Driscoll provided both specific examples and offered to testify generally concerning the process employed in connection with clients of State Street.[3] Defendants' purported alarm is beside the point, however, as Ms. Driscoll's role at State Street during the Class Period did not involve direct responsibility for selecting or monitoring investments in client plans of State Street.  Even if Ms. Driscoll had served in such a role during the Class Period, the use of the Fidelity Freedom Funds in a *different* plan, with a different participant population and investment objectives, would not be probative of Defendants' prudence or lack thereof in retaining the Fidelity Freedom Funds.

At bottom, Ms. Driscoll is an eminently qualified expert on fiduciary process in the retirement plan industry and the opinions she offers in this case are both reliable and will assist the trier of fact in reaching determinations concerning Defendants' prudence in retaining the challenged investments.  Ms. Driscoll's opinions are admissible under Rule 702.

---

[3] Ms. Driscoll testified as to her role in State Street's engagement with the Enron retirement plan. *See* Berin Decl., Ex. C, Excerpts of the Deposition of Kelly Driscoll ("Driscoll Tr."), at 89:12-22, 96:16-97:23.  In addition, Ms. Driscoll offered to describe examples by client size, types of services, and otherwise, but Defendants' counsel did not follow up, instead interrupting her testimony on this subject and instead electing to feign prejudice.  *See* Driscoll Tr., at 43:17-45:21 ("I'm certainly happy to talk about the types of clients, the sizes of clients, the type of service we provided, and the type of oversight and fiduciary process that we employed.").

## II.     BACKGROUND

### A.  Plaintiffs' Claims

The Plan is a defined contribution retirement Plan in which participants direct their investments among a menu of options selected by Defendants.  ECF No. 18, Second Am. Compl. ¶ 5.  Plaintiffs claim that Defendants allowed unreasonable expenses to be charged to participants and employed a flawed proceed for monitoring the Plan's investment options, which resulted in the selection of certain imprudent investment options in the Plan.  *See id.* ¶¶ 23-50. Principally, the investments challenged by Plaintiffs are the Fidelity Freedom Funds, which were the Plan's qualified default investment alternative during the Class Period, meaning account balances for participants who did not otherwise make investment elections were automatically invested in the Fidelity Freedom Funds.  *See id.* ¶ 26.

By virtue of this conduct, Defendants breached their fiduciary duties under ERISA § 404, 29 U.S.C. § 1104, or are otherwise liable for co-fiduciary breaches under ERISA § 405, 29 U.S.C. § 1105, or knowing participation in breaches by another fiduciary.

### B.  Ms. Driscoll's Opinions

Ms. Driscoll's report ("Driscoll Report") sets forth three principal opinions.  *See* Berin Decl., Ex. D, Driscoll Report, at 10.  First, Ms. Driscoll opines that Defendants' process fell below minimum standards applicable to fiduciaries of large defined contribution retirement plans.  *See id.*  Second, Ms. Driscoll opines specifically that the Committee failed to apply appropriate monitoring practices to the Fidelity Freedom Funds.  *See id.*  Third, Ms. Driscoll opines that Defendants failed to timely replace the Fidelity Freedom Funds.  *See id.*

Before discussing the specific grounds for her opinions, Ms. Driscoll outlines the minimum standards of conduct applicable to fiduciaries of large defined contribution retirement plans.  *See, e.g.*, *id.*, at 10-11.  Concerning fiduciary process, according to Ms. Driscoll, these

standards include adopting and following governance documents, performing due diligence based on relevant information, engaging in discussions and questions with advisors, considering relevant information to make informed decisions, and appropriately documenting activities and decisions. *See id.* Concerning the substance of fiduciary decision-making, Ms. Driscoll explains that investment selection and retention determinations must take into consideration factors including performance (including compared to both benchmarks and relevant peer groups), risk, expenses, competency of investment managers, and the suitability of an investment for the plan and participants in question. *See id.* Ms. Driscoll also elaborates that there are unique considerations applicable to monitoring target date funds, such as the Fidelity Freedom Funds. *See id.* These standards, and others on which Ms. Driscoll elaborates throughout the Driscoll Report, form the basis for her opinions concerning Defendants' process and the substance of their conduct in retaining the Fidelity Freedom Funds during the Class Period. In attempting to support the Motion, Defendants completely ignore Ms. Driscoll's explanation of these standards (as well as her impeccable qualifications), electing instead to freelance and argue against straw men. *See, e.g.*, Memo., at 5-7.

Ms. Driscoll applies these clear standards to the record in the case in order to render opinions concerning the sufficiency of Defendants' fiduciary process and substance of their retention decisions concerning the Fidelity Freedom Funds. For instance, Ms. Driscoll details numerous significant governance issues, including the Committee's failure to refer to governing documents and prior decisional materials, ignoring stated monitoring standards in the Plan's own investment policy statement, neglecting to evaluate the performance of the Plan's investment manager, and declining to implement an appropriate watch list process, among others. *See* Driscoll Report, at 11. Likewise, Ms. Driscoll chronicles concerns arising out the Committee's

failure to meet with sufficient frequency or call *ad hoc* meeting to address more urgent issues.
*See id.*, at 12.  In addition, Ms. Driscoll reviews unique concerns about Defendants failure to
apply the scrutiny it is important to apply to target date funds to the Fidelity Freedom Funds, as
well as issues with the 2015 request for information undertaken by the Plan's investment advisor
with respect to potential replacement target date funds.  *See id.*, at 13-14.  Ms. Driscoll also
identified deficiencies in minutes of Committee meetings and meetings for which minutes were
not taken at all, as well as serious and significant gaps in the knowledge of the Plan's fiduciaries
about certain core issues of Plan management and retirement plan administration in general.  *See
id.*, at 15-16.  Ms. Driscoll reviews quantitative and qualitative data going to the substance of
Defendants' conduct in retaining the Fidelity Freedom Funds, and applies the unique target date
fund considerations discussed above to the Fidelity Freedom Funds.  *See id.*, at 18-24.  Finally,
Ms. Driscoll details issues with Defendants' conduct following the placement of Fidelity
Freedom Funds on the watchlist in 2014 and the timing of Defendants' removal of the Fidelity
Freedom Funds from the Plan.  *See id.*, at 24-25.

### C.  Defendants' Deposition of Ms. Driscoll

Rather than use their opportunity to legitimately examine the grounds for Ms. Driscoll's
opinions, Defendants spent a substantial amount of Ms. Driscoll's deposition presenting her with
judicial opinions and pleadings in other cases and inappropriately asking that she provide
interpretations of these materials that she did not specifically consider in preparing the Driscoll
Report.  *See* Driscoll Tr., at 163:1-195:15; 203:9-205:5; 234:16-21; 245:6-246:12; 278:6-280:5.
In addition, as it relates to Defendants' gripe that Ms. Driscoll was supposedly unwilling to
provide necessary information about her prior work at State Street Corporation ("State Street"), it
bears noting that Defendants made no attempt either prior to *or after* her deposition (when any

legitimate discovery issue had matured) to seek information related to the issues they now claim are somehow important.  Further, Ms. Driscoll provided meaningful responses to Defendants' examination about her experience and was willing to testify to additional policies and practices upon which Defendants declined to follow up because they plainly were seeking to create a basis for the instant motion, as opposed to engaging in any legitimate discovery exercise.  *See* Driscoll Tr., at 45:17-21. Still more information is reflected in publicly filed Forms 5500 for retirement plans advised by State Street.  It is plain that Defendants did not take any of these avenues so that, in their Motion, they could attempt to suggest the presence of fire where there is *not even smoke*.

It is now apparent why Defendants took this perplexing tack: their Motion is not legitimately grounded in any purported issues with the reliability or helpfulness of Ms. Driscoll's opinions, let alone her inarguably superior qualifications, but a "set piece" attempting to seek a clearly improper early adjudication of merits issues.

### III.    ARGUMNET

#### A.  Standard of Review

The Third Circuit has advised that "Rule 702 mandates a policy of liberal admissibility." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir.1994); *see also Kenney v. Watts Regulator Co.*, 512 F. Supp. 3d 565, 579 (E.D. Pa. 2021) (Kearney, J.) ("the Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact under Rule 401 generally, and Rule 702 has a liberal policy of admissibility." (internal quotation marks omitted)).  Indeed, the basis for an expert's opinion and credibility it should be afforded generally can be adequately tested through the adversarial process.

The preference for admission of expert testimony holds especially firm where, as here, a court will sit as factfinder.  *See Alco Indus., Inc. v. Wachovia Corp.*, 527 F. Supp. 2d 399, 405

(E.D. Pa. 2007) (citing *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006)) ("In the context of preparing for a bench trial, it is not necessary to apply the *Daubert* standard with full force in advance of trial."); *see also Gannon v. U.S.*, No. 03-6626, 2007 WL 2071878, *1 (E.D. Pa. July 17, 2007) (internal citations omitted) (quoting *Clark v. Richman*, 339 F. Supp. 2d 631, 648 (M.D. Pa. 2004)) ("In a bench trial, this Court's 'role as gatekeeper pursuant to *Daubert* is arguably less essential' because a judge rather than a jury is the fact finder." ).  At this stage, the Court is not charged with weighing the correctness of an expert's testimony, nor choosing between competing expert witnesses.  Instead, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of" confronting expert testimony.  *Daubert*, 509 U.S. at 596.

### B.  Objective Prudence

The Motion contains significant discussion of what Defendants call the "objective prudence" element of Plaintiffs' claim.  Defendants' assertions are largely inappropriate at this stage, but it is necessary to address certain aspects in the context of the Motion.  At its core, Defendants' discussion of "objection prudence" misconstrues the analysis dictated by the authorities upon which they rely.[4]  In addition, Defendants' discussion does not acknowledge

---

[4]In those same authorities, the Third Circuit has renewed the first principle that the prudence inquiry "focuse[s] on a fiduciary's conduct in arriving at [an] investment decision." *Renfro v. Unisys Corp.*, 671 F.3d 314, 322 (3d Cir. 2011).  While the court in *Renfro* appeared to acknowledge in *dicta* that it has approved of an approach examining whether a decision led to objectively prudent investments, the court did not analyze (or even mention) the potential objective prudence of the challenged investments.  *See id.*  In the case referenced by the court in *Renfro*, the Third Circuit considered a district court's "objective prudence" theory as an "alternate" basis for holding the defendants were not imprudent.  *See In re Unisys Savings Plan Litig.*, 173 F.3d 145, 153-54 (3d Cir. 1999).  The Court did not clearly bifurcate the traditional prudence analysis in the manner defendants suggest.  *See id.*  In fact, the Third Circuit did not explain whether the factors on which the district court relied on in finding the investments to be prudent were exhaustive or simply illustrative, let alone how to weigh competing findings or apply the factors to other types of investments.  *See id.*  In any event, as discussed below, Ms.

whether they shoulder any of the burden in establishing "objective prudence," according to their

framing.  While the Third Circuit has not clearly articulated the allocation of the burden as to

"objective prudence," Defendants shoulder a share of the burden of disproving causation

(ostensibly, the element to which "objective prudence" is related).  *See Sacerdote v. New York*

*Univ.*, 9 F.4th 95, 113 (2d Cir. 2022) (""Although plaintiffs bear the burden of proving a loss, the

burden under ERISA shifts to the defendants to disprove any portion of potential damages by

showing that the loss was not caused by the breach of fiduciary duty . . . This approach is aligned

with the Supreme Court's instruction to 'look to the law of trusts' for guidance in ERISA cases."

(citation omitted)); *see In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 438 (3d Cir. 1996) ("if a

plaintiff proves a failure to diversify, the burden shifts to the defendant to demonstrate that

nondiversification was nonetheless prudent"); *see also Meltzer v. Graham*, 112 F.3d 207, 209

(5th Cir. 1997) (same).  And more importantly, even if the Court finds that Plaintiffs bear the

burden of disproving "objective prudence," Ms. Driscoll offers admissible probative evidence.[5]

Defendants also point to two decisions they claim support a finding that the Fidelity

Freedom Funds are objectively prudent.  Neither decision reaches an apposite determination.

First, the Sixth Circuit in *Smith v. CommonSpirit Health* simply affirmed the dismissal of a

complaint because it found the plaintiff had not alleged sufficient facts *at the pleadings stage* to

state a claim that the defendants' fiduciary process was deficient.  *See* 37 F.4th 1160, 1166 (6th

Cir. 2022).  In *CommonSpirit*, the Sixth Circuit construed (albeit incorrectly) the plaintiff's

---

Driscoll offers reliable evidence that is probative of the "objective imprudence" of the Fidelity
Freedom Funds.  Accordingly, her opinions in this regard are admissible.

[5]Defendants characterize one portion of the Driscoll Report as Plaintiffs' "only evidence
pertaining to the objective prudence of the Freedom Funds that Plaintiffs' experts have
provided."  Memorandum at 8.  Not only is that assertion false, it reveals the ulterior motive of
the Motion as one designed to educate the Court on the issues (against its admonition) and seeks
determinations going to the merits.

complaint as challenging active management as imprudent *per se*, a position Plaintiffs do not press. *See id.*, at 1163-64. Defendants also conveniently ignore that *every other* court to consider claims of imprudence concerning the retention of the Fidelity Freedom Funds over time periods similar to the Class Period have found such claims **sufficient**.[6] Second, the District of Colorado in *Ramos v. Banner Health* considered the prudence of the Fidelity Freedom Funds during an entirely different time period than the Class Period and appeared to recognize the strategy changes the Fidelity Freedom Funds underwent just prior to the Class Period, as well as capital outflows, could lead to a different conclusion. *See* 461 F. Supp. 3d 1067, 1128-1131 (D. Colo. 2020).

Even more critically, The Honorable Janet C. Hall of the District of Connecticut recently denied the defendants' motion for summary judgment, including because it found that defendants ***did not establish*** that the undisputed facts supported a finding that the Fidelity Freedom Funds were prudent. *See id.*, at *18. Among other facts, Judge Hall recognized that the plan's investment advisor "NEPC observed in 2016 that sixty percent of Fidelity's target date fund clients in the $1 billion to $3 billion asset range had moved to alternative [target date] funds." *Garthwait v. Eversource Energy Co.*, 2022 WL 3019633, at *4 (D. Conn. July 29, 2022). The court in *Eversource* also credited the $5.4 billion in divestment from the Fidelity Freedom Funds in 2018 as a basis for denying summary judgment. *See id.*

---

[6] *See In re LinkedIn ERISA Litig.*, 2021 WL 5331448 (N.D. Cal. Nov. 16, 2021); *In re Omnicom ERISA Litig.*, 2021 WL 3292487 (S.D.N.Y. Aug. 2, 2021); *In re Prime Healthcare ERISA Litig.*, 2021 WL 3076649 (C.D. Cal. July 16, 2021); *In re Biogen, Inc. ERISA Litig.*, 2021 WL 3116331 (D. Mass. July 22, 2021); *In re Quest Diagnostics ERISA Litig.*, 2021 WL 1783274 (D.N.J. May 4, 2021); *Blackmon v. Zachry Holdings, Inc.*, 2021 WL 2190907 (W.D. Tex. Apr. 22, 2021); *Jones v. Coca-Cola Consolidated, Inc.*, 2021 WL 1226551 (W.D.N.C. Mar. 31, 2021); *In re MedStar ERISA Litig.*, 2021 WL 391701 (D. Md. Feb. 4, 2021).

### C.  Ms. Driscoll is Qualified to Offer each of Her Opinions[7]

Defendants argue that Ms. Driscoll is unqualified to offer opinions bearing on the substantive prudence of the challenged investments based on the assertion that she has no "'specialized knowledge' with respect to the prudence of an investment option."  Memorandum at 10.  They transparently attempt to minimize Ms. Driscoll's significant and relevant experience. In fact, Ms. Driscoll has over 35 years of experience directly providing fiduciary services to retirement plans or supporting and setting policy applicable to professionals carry out such functions within organizations she led.[8]  *See* Driscoll Report, Ex. A.  In connection with these roles, Ms. Driscoll "participated in or provided advice establishing fiduciary best practices for such plans, conducting due diligence, monitoring investments, reviewing investment performance, establishing watchlist metrics and terminating investment managers."  *See* Driscoll Report, at 3.  Defendants do not engage with (let alone dispute) this experience, which directly bears on the substantive evaluation of investments.  Instead, Defendants argue that, because Ms. Driscoll testified that she collaborated with colleagues during her more than 30 years at State Street, she is somehow seeking to convert their expertise into her own.  *See* Memorandum at 10. But the unremarkable fact that Ms. Driscoll, while employed by a significant provider of trust, investment, fiduciary and other financial services, collaborated with or relied on colleagues possessing expertise in finance and economics disciplines does not somehow detract from her own relevant expertise.

---

[7]Defendants do not challenge Ms. Driscoll's qualifications to offer her opinions concerning Defendants' fiduciary process.  Thus, Plaintiffs only discuss Ms. Driscoll's qualifications to offer her additional opinions.

[8]In light of this experience, Ms. Driscoll's prior expert testimony on standards of conduct applicable to ERISA fiduciaries has been credited in federal court.  *See Thompson v. Avondale Indus., Inc.*, No. Civ.A. 99–3439, 2003 WL 359932, at *10-11, 14 (E.D. La. Feb. 14, 2003).

The cherry-picked quotations presented by Defendants conceal that Ms. Driscoll's testimony concerning her access to State Street's internal economists responded to questions about her *process* opinions (for which Defendants **do not challenge** Ms. Driscoll's qualifications). *See* Driscoll Tr., at 30:9-32:5; 60:18-61:21. While Defendants also suggest that Ms. Driscoll disclaimed being an expert in finance or economics, they do not define those terms or seek to establish that those are the ***only*** areas of expertise sufficient to form the basis of opinions going to the substantive prudence of investments at issue. *See* Memo., at 10-11. In fact, Defendants' deposition citations omit important clarification provided by Ms. Driscoll: "I do have significant investment experience, so I am familiar with in the course of my career with some of those concepts and how they might apply and how you are evaluating investment managers." Driscoll Tr., at 149:9-14. Ms. Driscoll's substantial experience plainly qualifies her to offer opinions that probative of the substantive prudence of the investments at issue. *See Kenny*, 512 F. Supp. 3d at 581 (noting propriety of expert drawing from experience).

### D.  Ms. Driscoll's Opinions are Reliable

Courts in this District have acknowledged that the factors generally set forth in authorities seeking to distill the traditional reliability factors have generally done so "in the context of testing the reliability of scientific methods of proof and [such factors] do not so readily and easily apply in the context of testing the reliability of opinions concerning the characterization of complicated business transactions." *ProtoComm Corp. v. Novell Advanced Servs., Inc.*, 171 F. Supp. 2d 473, 477 (E.D. Pa. 2001) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 n.8 (3d Cir. 1994)). Thus, "relevant reliability concerns may focus upon personal knowledge or experience," as opposed to "scientific foundations." *Id.* (citing *Kumho Tire*, 526 U.S. at 152).

1.  **Ms. Driscoll's Opinions Concerning Defendants' Fiduciary Process are Reliable**

Defendants argue that Ms. Driscoll's report amounts to impermissible *ipse dixit*, insofar as it fails to provide a basis for connecting the record reviewed to the conclusions reached.  *See* Memo., at 18.  Yet, in setting forth the standards of conduct applicable to fiduciaries of large retirement Plans, Ms. Driscoll adequately connects her experience to the opinions rendered, and elaborated on the same during her deposition.  In addition, Defendants' suggestion that Ms. Driscoll's review of the record was selective or based on "some subset of documents produced in discovery" is disingenuous, at best.  Ms. Driscoll was provided with access to all documents she viewed as relevant to her analysis.  Importantly, Defendants also dramatically mischaracterize Ms. Driscoll's opinion in an attempt to support this point.  Their assertion that Ms. Driscoll's opinion "is essentially that the Committee failed to follow the process that she claims she applied when she was at State Street" brazenly ignores the specific standards Ms. Driscoll outlines.  *See* Driscoll Report, at 10-25.  Moreover, Ms. Driscoll does not (and need not) contend that "her process is the best or only process that a committee could follow to fulfill their fiduciary obligations."  Memorandum at 18.  The Driscoll Report sets forth *minimum standards* that underlie a sufficient process in the context of fiduciaries of large retirement plans, but she does not claim that "her process" is somehow the "best" and "only."  *Id.*

Under similar circumstances, the court in *Eversource* recently admitted the testimony of the defendants' expert where it found the opinion was based on the expert's training, experience, and review of relevant aspects of the record.  *See Eversource*, 2022 WL 3019633, at *11.  Among other things, Ms. Driscoll's "opinions result from her applying her specialized knowledge and experience as an investment professional to analyze . . . meeting notes, materials, and the other record evidence she cites in her [r]eport."  *See id.* (citations omitted); *see also In re*

*Puda Coal Sec. Inc., Litig.*, 30 F. Supp. 3d 230, 257 (S.D.N.Y.), *aff'd sub nom. Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016) (finding, where an expert had "experience with the type and purpose of certain documents referenced as part of plaintiffs' case" that the expert's opinions regarding such documents were "not *ipse dixit* but instead based on his experience with these types of documents"). Defendants also passingly suggest that Ms. Driscoll failed to consider certain record evidence, but even if such a suggestion was accurate (it is not), the "purported failure to adequately address certain evidence does not reduce her opinion to 'speculative or conjectural' testimony" in light of her significant review of and engagement with the record otherwise. *Eversource*, 2022 WL 3019633, at *11.

Defendants also argue that Ms. Driscoll's opinions are unreliable because she was not able to identify or provide details of certain of State Street's current or former client engagements. *See* Memorandum at 19-20. As became clear at Ms. Driscoll's deposition, however, although Ms. Driscoll served on State Street's fiduciary committee and had responsibilities related to State Street's independent fiduciary services business, she did not directly participate in or perform services related to the selection and monitoring of investments in client plans of State Street. *See* Driscoll Decl. ¶ 4; *see also* Driscoll Tr., at 53:8-55:2, 78:9-23, 90:3-91:11; Driscoll Report, Ex. A. In the context of client engagements pursuant to which State Street participated in or performed services related to the selection and monitoring of investments in client plans, such work was performed by professionals staffed on each respective State Street client engagement team. *See id.* Ms. Driscoll's role was to support and set organizational policy applicable to professionals providing direct client services, but not to provide such services herself. *See id.* In addition, Ms. Driscoll testified that she is unaware of any client plans of State Street that utilized the Fidelity Freedom Funds during or prior to the

14

Class Period.  *See* Driscoll Decl. ¶ 5.  Ms. Driscoll is also unaware of any client plans of State

Street that utilized the Fidelity Freedom Funds during the Class Period, and cannot recall any

occasion on which she recommended the selection or retention of the Fidelity Freedom Funds in

connection with any past client engagement.  *See Id*.  During and following Ms. Driscoll's

employment at State Street, she was and continues to be bound by confidentiality provisions that

prevent Ms. Driscoll from disclosing the identity of State Street clients and details of State

Street's engagements with such clients without authorization from State Street.  *See* Driscoll

Decl. ¶ 6.  Defendants have not requested that Ms. Driscoll seek authorization from State Street

to disclose the identity of State Street clients or details of State Street's engagement with such

clients, and Plaintiffs are not aware of any efforts by Defendants to seek authorization from State

Street for the same purposes.[9]

### 2.  Ms. Driscoll's Opinions Bearing on the Substantive Prudence of the Challenged Investments are Reliable

Defendants argue that Ms. Driscoll's investment-related opinions are unreliable because,

they contend, Ms. Driscoll did not perform independent analysis applying statistical or economic

principles.  *See* Memo., at 11.  As an initial matter, Defendants do not point to any authority (nor

could they) that experts must perform a particular type of analysis or consider specific metrics in

order for their opinions to be reliable; of course, the barometer for reliability is whether the

analysis that the expert *actually* employs is sufficiently supportable.  At most, Defendants'

apparent gripe that Ms. Driscoll did not employ their preferred type of analysis goes to the

---

[9]In addition, Defendants could have used public data reported in Form 5500 filings to determine whether clients of State Street utilized the Fidelity Freedom Funds.  Despite their suggestions to the contrary, Form 5500 filings for plans advised by State Street would disclose State Street's role as advisor, as well as the plan's investments.

weight of her opinion and is a quintessential example of matter appropriate for exploration on cross examination.

Troublingly, Defendants simply ignore that Ms. Driscoll considered and analyzed numerous relevant metrics grounded in finance and economics principles as routinely applied in the investment management profession (in which Ms. Driscoll inarguably has significant experience). When asked by Defendants counsel to identify principles of economics considered in her analysis, Ms. Driscoll named several: "[A]lpha generation . . . beta evaluation, you know, as you mentioned before, [S]harp[e] ratios and risk adjusted metrics to evaluate how particularly an active manager is performing. Those are all --" Driscoll Tr., at 143:6-11. Apparently intent on proving a rhetorical point, Defendants' counsel interrupted to ask, "Does the word alpha appear in your report?" *Id.*, at 143:13-14. Ms. Driscoll explained:

> No, but it certainly is something that I considered when looking at the information that Centurion and Fidelity provided to the committee . . . when you are looking at those -- well, let me say what my report indicates is that when you are choosing an active manager and you are evaluating the performance, a basic concept is to see if they are actually meeting their objective to outperform their benchmark. In helping determine that and evaluate that, you are looking at did they add value by beating a benchmark, or beating the markets in general, I mean that sort of basic concept.

*Id.*, at 143:15-144:7. This exchange perfectly illustrates that Defendants' complaints are the type that may be, at best, suitable for cross-examination at trial – although presumably, at trial, counsel for Defendants will not be permitted to repeatedly interrupt Ms. Driscoll mid-sentence to avoid testimony that is unhelpful to their cause -- but they do not form the grounds for exclusion. Indeed, Ms. Driscoll articulated the precise principles considered in reaching her opinions and supported their application. *Id.*, at 142:19-143:11. While Defendants' counsel was more focused on the unremarkable matter of whether a certain term appears in her report, Ms. Driscoll's testimony was clear (perhaps too clear for Defendants to reference it, in full, in the Memorandum). As this Court recently recognized, "a party confronted with an adverse expert

16

witness who has sufficient, though perhaps not overwhelming, facts and assumptions as the basis

for his opinion can highlight those weaknesses through effective cross examination." *Kenny*,

512 F. Supp. 3d at 581 (internal alteration omitted); *see also Oddi v. Ford Motor Co.*, 234 F.3d

136, 145 (3d Cir. 2000) (finding the admissibility test is not whether a proffered opinion has the

"best foundation" or is "demonstrably correct").[10]

Wasting no opportunity to substitute subterfuge for legitimate argumentation, Defendants

spend no less than two pages of the Memorandum taking aim at Plaintiffs' counsel for

allegations in a pleading in *different case*, involving entirely *different parties*, *different*

*investments and services*, and a *different time period*. *See* Memorandum at 12-13.[11]  Indeed,

Defendants presented Ms. Driscoll with the above-described complaint at her deposition and

asked her to speak directly to certain isolated allegations (after Ms. Driscoll testified that she had

neither seen the complaint prior to her deposition nor, of course, read the entire complaint in

order understand the full context). *See* Driscoll Tr., at 120:16-17.  Yet, the allegations

Defendants cite are not inconsistent with Plaintiffs' positions in this litigation or Ms. Driscoll's

opinions in any way.  Defendants suggest that the allegations assert that a sound fiduciary

process must be consistent with basic economics and established investment theory.  Setting

---

[10]Defendants' myopic notion that Ms. Driscoll is not permitted to rely on metrics presented in
materials generated for the Committee is unfounded.  *See* Memo., at 11.  An expert is not
required to perform testing to confirm each of their assumptions when there is a basis to rely on
them.  *See Kenny*, 512 F. Supp. 3d at 581.  Ms. Driscoll relies on the very data presented to the
Committee, which is more than sufficient basis to rely on it in her analysis.

[11]Defendants incorrectly speculate that the allegations in this unrelated complaint are a reaction
to the Sixth Circuit's decision in *CommonSpirit*.  Their irrelevant and wrongheaded speculation
speaks volumes about the legitimacy of the Motion.  As Defendants also acknowledge, the
Fidelity Freedom Funds are not presented as a prudent investment option or potential
replacement fund in that unrelated litigation.  The inclusion of the Fidelity Freedom Funds
among data presented in that pleading (which also notes the imprudence of the Fidelity Freedom
Funds) does not undermine any of Plaintiffs' arguments or Ms. Driscoll's opinions.

aside any disagreement with Defendants' characterization of the allegations, as already explained, Ms. Driscoll's opinions **do** consider principles of economics and investment theory. Unsurprisingly, but disappointingly, Defendants offer no authority suggesting the allegations in a completely unrelated case brought under different circumstances could somehow cabin an expert's testimony, even if there were any material inconsistencies (of which there are none here).[12]

In addition, Defendants argue that her investment-related opinions impermissibly rely on hearsay evidence to the extent she relies on financial and popular press articles discussing performance and other issues observed in the Fidelity Freedom Funds. *See* Memo., at 14. As Defendants acknowledge, Rule 703 "permits experts to rely on hearsay so long as that hearsay is of the kind normally employed by experts in the field." *In re TMI Litig.*, 193 F.3d 613, 697 (3d Cir. 1999). Indeed, Ms. Driscoll testified during her deposition that she regularly receives and considers in connection with her work several of the specific sources and each of the types of sources represented in the portion of the Driscoll Report at issue. *See* Driscoll Tr., at 305:19-23 ("Q. Can you tell me which of these sources you subscribe to and consider regularly in your work? A. Well, over the years and continuing now, certainly Market Watch, the [New York] Times. Investment News, I know we get some information on Investment News, I'm not sure if it's a full subscription."); 306:4 ("I often look at Reuters . . . ."). Ms. Driscoll's testimony speaks

---

[12]It bears special mention that Defendants present the musing of a purported "industry observer" on unrelated lawsuits filed by Plaintiffs' counsel. *See* Memorandum at 13. In reality, the "industry observer" is a provider of fiduciary insurance to defendants in litigation of this type (who incidentally, knows not of what he purports to speak) and, on information and belief, cases in which Plaintiffs' counsel represent plan participants and beneficiaries. The Court should give no credence to this clearly impertinent and inappropriate matter from a hopelessly conflicted (and, based on repeated characterizations of the allegations in those cases as, if not defamatory, incredibly misguided) "observer." *See id.*

directly to the kind of materials "normally employed by experts in the field." *In re TMI Litig.*,

193 F.3d at 697. Thus, to the extent that information in the articles cited in the Driscoll Report

are hearsay, Ms. Driscoll is entitled to rely on them. Defendants also ignore that Ms. Driscoll's

process opinion is informed by the negative financial and popular press coverage about the

Fidelity Freedom Funds set forth in her report. *See* Memo., at 14-15. To the extent Ms.

Driscoll's opinions concern whether Defendants' fiduciary process was deficient for its failure to

consider and respond to worrisome press coverage about the Fidelity Freedom Funds, the articles

are not being offered for the truth of the matter asserted and, therefore, are not inadmissible

hearsay.

In sum, Defendants will be able to examine any areas of perceived weakness with Ms.

Driscoll's opinions at trial. The Motion does not, however, provide sufficient basis for the

exclusion of Ms. Driscoll's opinions at this juncture.

### E. Ms. Driscoll's Opinions are Helpful[13]

Defendants argue that Ms. Driscoll's opinions are legal conclusions based on her

interpretation fiduciary requirements under ERISA and "application of the law to the facts as she

sees them." Memo., at 16. In levying their cheap shots, Defendants entirely ignore that Ms.

Driscoll grounds her process opinion (as with her opinions going to the substantive prudence of

the challenged investments) in the Driscoll Report's clear explanation of the minimum standards

of conduct applicable to fiduciaries of large defined contribution retirement plans. *See id.*, at 10-

11. These are neither general legal principles nor interpretations of fiduciary requirements under

ERISA, but specific standards of conduct concerning plan governance, investment due diligence,

---

[13]Defendants do not challenge Ms. Driscoll's opinions bearing on the substantive prudence of the challenge funds on these grounds. Thus, Plaintiffs only discuss the degree to which Ms. Driscoll's process opinions will be helpful to the trier of fact.

reliance on third party advisors, fiduciary decision-making, and documentation of activities and decisions.  *See id.*  Within each of these areas, the Driscoll Report elaborates on specific standards applicable to fiduciaries of large defined contribution plans.  *See id.*, at 10-25. Defendants, however, only provide cherry-picked language that avoids providing the context and analysis supporting the propositions quoted.  *See* Memorandum at 16.

It is of no moment that Ms. Driscoll acknowledged that the minimum standards of conduct applicable to retirement plan fiduciaries are informed by case law.  *See* Memorandum at 17.  Indeed, confirming the degree to which industry standards are informed by case law, fiduciaries of similar plans routinely receive updates on legal developments concerning ERISA's fiduciary duties from internal and external legal counsel.  None of this transforms Ms. Driscoll's opinions into impermissible legal conclusions.  In recognition of these dynamics, courts around the country routinely allow expert testimony bearing on the prudence of fiduciaries' conduct in ERISA breach of fiduciary duty actions.  *See Pledger v. Reliance Tr. Co.*, NO. 1:15-CV-4444-MHC, 2019 WL 44439606, at *14 (N.D. Ga. Feb. 25, 2019) (collecting cases); *Scalia v. Reliance Tr. Co.*, No. 17-cv-4540 (SRN/ECW), 2021 WL 795270, at *21 (D. Minn. Mar. 2, 2021); *see also Hans v. Tharaldson*, No. 3:05-cv-115, 2011 WL 6937598, at *6 (D.N.D. Sept. 23, 2011) (finding that, although expert "may not opine as to the ultimate legal issue of whether [defendants] violated ERISA, [s]he may testify about a variety of fiduciary and economic issues, including the duty to act prudently, the standard of care applicable to a fiduciary in this situation . . . ." (alterations in original)).  There should be little doubt that, if Ms. Driscoll had testified that she does not keep abreast of legal developments concerning ERISA's fiduciary duties,

Defendants would raise different arguments about Ms. Driscoll's qualifications and the reliability

of her opinions.[14]

**IV.    CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motion to Exclude

Proposed Expert Testimony of Kelly Driscoll in its entirety.

Dated:  September 23, 2022                    Respectfully submitted,

                                             /s/ James C. Shah
                                             James C. Shah
                                             Alec J. Berin
                                             MILLER SHAH LLP
                                             1845 Walnut Street, Suite 806
                                             Philadelphia, PA 19103
                                             Telephone: (866) 540-5505
                                             Facsimile:  (866) 300-7367
                                             Email: jcshah@millershah.com
                                                     ajberin@millershah.com

                                             James E. Miller
                                             Laurie Rubinow
                                             MILLER SHAH LLP
                                             65 Main Street
                                             Chester, CT 06412
                                             Telephone: (866) 540-5505
                                             Facsimile:  (866) 300-7367
                                             Email: jemiller@millershah.com
                                                     lrubinow@millershah.com

                                             Kolin C. Tang
                                             MILLER SHAH LLP
                                             19712 MacArthur Boulevard
                                             Suite 222
                                             Irvine, CA 92612
                                             Telephone: (866) 540-5505
                                             Facsimile:  (866) 300-7367
                                             Email: kctang@millershah.com

---

[14]Defendants' argument on this point should ring especially hollow in light of Defendants'
counsel presentation of numerous judicial opinions to Ms. Driscoll during her deposition and
repeated questions seeking her interpretation of the same

Mark K. Gyandoh
Gabrielle P. Kelerchian
CAPOZZI ADLER, P.C.
312 Old Lancaster Road
Merion Station, PA  19066
Telephone: (610) 890-0200
Facsimile:  (717) 233-4103
Email:  mark@capozziadler.com
          gabriellek@capozziadler.com

Donald R. Reavey
CAPOZZI ADLER, P.C.
2933 North Front Street
Harrisburg, PA  17110
Telephone: (717) 233-4101
Facsimile:  (717) 233-4103
Email:  donr@capozziadler.com

*Attorneys for Plaintiffs, the Plan
and the Class*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing was electronically filed with the

Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all

counsel of record for this case, and which is available for viewing and downloading from the

CM/ECF system of the U.S. District Court for the Eastern District of Pennsylvania.


/s/James C. Shah
James C. Shah