# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY K. BOLEY, *et al.*, | Case No: 2:20-cv-02644 |
| Plaintiffs, | February 15, 2023 |
| v. | |
| UNIVERSAL HEALTH SERVICES, INC., *et al.*, | |
| Defendants. | |

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

---

## **TABLE OF CONTENTS**

Table of Authorities.................................................................................................. iii

I.     INTRODUCTION................................................................................................1

II.    BACKGROUND..................................................................................................2

       A.    Procedural History........................................................................................2

       B.    The Settlement...............................................................................................4

              1.    Distribution of Settlement funds to members of the Settlement Class.......4

              2.    Attorneys' fees, expenses, and case contribution awards..........................5

       C.    Class Notice..................................................................................................6

III.    ARGUMENT .......................................................................................................7

       A.    The Court Should Maintain Certification of the Settlement Class and Grant
            Final Approval of the Settlement ..........................................................................7

              1.    The Rule 23(e)(2) requirements weigh in favor of final approval of the
                    Settlement..........................................................................................................9

                    i.    The relief provided for the class is adequate..................................9

                    ii.    The Plan of Allocation treats members of the Settlement Class
                          equitably ...................................................................................10

              2.    The Girsh factors weigh in favor of final settlement..............................11

                    i.    The complexity, expense and likely duration of the litigation .....11

                    ii.    The reaction of the Settlement Class to the Settlement...............11

                    iii.    The stage of the proceedings and the amount of discovery
                          completed ...................................................................................13

                    iv.    The risks of establishing liability and damages...........................13

                    v.    The risks of maintaining the class action through trial ...............15

                    vi.    The ability of the defendants to withstand a greater judgment ....15

i

vii.    The range of reasonableness of the settlement fund in light of the best possible recovery and attendant risks ........................16

B.    The Plan of Allocation Should be Finally Approved ...........................................18

C.    The Court Should Maintain Certification of the Class through Entry of a Final Approval Order....................................................................................................19

IV.    CONCLUSION .............................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................................................ 15

*Boley v. Universal Health Servs., Inc. ("Boley I)*,
    337 F.R.D. 626 (E.D. Pa. 2021)........................................................................ 3, 18

*Boley v. Universal Health Servs., Inc. ("Boley II")*,
    36 F.4th 124 (3d Cir. 2022) ............................................................................... 3, 18

*Galt v. Eagleville Hosp.*,
    310 F. Supp. 3d 483 (E.D. Pa. 2018) ...................................................................... 7

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ....................................................................... passim

*Halley v. Honeywell Int'l, Inc.*,
    861 F.3d 481 (3d Cir. 2017) ..................................................................................... 8

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ................................................................ 8, 13, 14, 15

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000)........................................................................... 17

*In re Linerboard Antitrust Litig.*,
    292 F. Supp. 2d 631 (E.D. Pa. 2003)...................................................................... 8

*In re Linerboard Antitrust Litig.*,
    321 F. Supp. 2d 619 (E.D. Pa. 2004)................................................................... 16

*In re Merck & Co., Inc., Vytorin ERISA Litig.*,
    2010 WL 547613 (D.N.J. Feb. 9, 2010) .............................................................. 14

*In re Nat'l Football League Players Concussion Inj. Litig.*,
    821 F.3d 410 (3d Cir. 2016) ........................................................... 11, 12, 15, 16

*In re Nat'l Football League Players Concussion Inj. Litig*,
    307 F.R.D. 351 (E.D. Pa 2015)............................................................................ 16

*In re New Jersey Tax Sales Certificates Antitrust Litig.*,
    750 F. App'x 73 (3d Cir. 2018)............................................................................... 8

*In re Processed Egg Prod. Antitrust Litig.*,
  2017 WL 5585717 (E.D. Pa. Nov. 20, 2017) ................................................................ 8, 11, 14

*In re Prudential Insurance Company*,
  148 F.3d 283 (3d Cir. 1998) ....................................................................................................... 14

*In re Rent-Way Sec. Litig.*,
  305 F. Supp. 2d 491 (W.D. Pa. 2003) ....................................................................................... 14

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ........................................................................................... 11, 13, 15

*Leap v. Yoshida*,
  2015 WL 619908 (E.D. Pa. Feb. 15, 2015) ............................................................................ 7, 8

*McDonough v. Toys R Us, Inc.*,
  80 F. Supp. 3d 626 (E.D. Pa. 2015) ........................................................................................... 17

*Pinnell v. Teva Pharms. USA, Inc.*,
  2021 WL 5609864 (E.D. Pa. June 11, 2021) ............................................................................ 10

*Ramos v. Banner Health*,
  1 F.4th 769 (10th Cir. 2021) ......................................................................................................... 9

*Reibstein v. Rite Aid Corp.*,
  761 F.Supp.2d 241 (E.D. Pa. 2011) ........................................................................................... 16

*Sacerdote v. New York Univ.*,
  9 F.4th 95 (2d Cir. 2021) ............................................................................................................... 9

*Sullivan v. DB Investments, Inc.*,
  667 F.3d 273 (3d Cir. 2011) ......................................................................................................... 16

*Sweda v. Univ. of Pennsylvania*,
  2021 WL 2665722 (E.D. Pa. June 29, 2021) ............................................................................... 7

*Sweda v. University of Pennsylvania*,
  2021 WL 5907947 (E.D. Pa. Dec. 14, 2021) ............................................................................ 17

*Vasco v. Power Home Remodeling Grp. LLC.*,
  2016 WL 5930876 (E.D. Pa. Oct. 12, 2016) ....................................................................... 14, 16

*Walsh v. Great Atl. & Pac. Tea Co.*,
  726 F.2d 956 (3d Cir. 1983) ......................................................................................................... 17

## Statutes

29 U.S.C. § 1001 ................................................................................................................................. 1

iv

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(1) ................................................................................................ 2

Fed. R. Civ. P. 23(a) ................................................................................................... 18

Fed. R. Civ. P. 23(b)(1) .............................................................................................. 18

Fed. R. Civ. P. 23(e) .................................................................................................... 7

Fed. R. Civ. P. 23(e)(2) ........................................................................................ 7, 8, 9

Fed. R. Civ. P. 23(e)(2)(C)(i-iv) .................................................................................. 9

Fed. R. Civ. P. 23(e)(2)(C)(iv) ............................................................................. 9, 10

Plaintiffs,[1] on behalf of the Universal Health Services, Inc. Retirement Savings Plan (the "Plan") and the proposed Settlement Class, respectfully submit this Memorandum of Law in Support of their Unopposed Motion for Final Approval of Class Action Settlement ("Motion"), pursuant to the Court's Order Granting Plaintiffs' Motion for Preliminary Approval entered on October 31, 2022 (ECF No. 114, "Preliminary Approval Order").  Plaintiffs respectfully request that the Court issue an Order that: (1) approves the Settlement with Defendants, as memorialized in the Settlement Agreement dated October 20, 2022 and exhibits thereto; (2) maintains certification of the Settlement Class; (3) finds the manner in which the Settlement Class was notified of the Settlement was the best notice practicable under the circumstances, and fair, reasonable, and adequate; and (4) approves the Plan of Allocation.  Defendants do not oppose this Motion.

## I.   **<u>INTRODUCTION</u>**

The Parties have agreed to the Settlement in order to resolve this representative action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, for total relief of $12,500,000.00, which will provide a substantial recovery to members of the Settlement Class.  In light of the favorable relief the Settlement provides, as well as the Court's Order approving Plaintiffs' Motion for Preliminary Approval of  Class Action Settlement, Plaintiffs and Class Counsel submit that the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class, and request that the Court grant Plaintiffs' Motion for Final Approval of the Class Action Settlement.

---

[1]Plaintiffs are Mary K. Boley, Kandie Sutter, and Phyllis Johnson (collectively, "Plaintiffs"). Defendants are Universal Health Services, Inc. ("Universal") and the UHS Retirement Plans Investment Committee ("Committee," with Universal, "Defendants," and collectively, the "Parties").  Capitalized terms not otherwise defined herein have the same meaning as in the Settlement Agreement dated October 20, 2022.

On October 31, 2022, the Court entered the Preliminary Approval Order, which provisionally approved of the Settlement, maintained certification of the Settlement Class, preliminarily approved of the proposed Notice Plan, and set a final approval hearing date of March 30, 2023.  *See generally* Preliminary Approval Order.  Since none of the circumstances warranting preliminary approval have changed, and the reaction of the Settlement Class has been overwhelmingly positive, Plaintiffs now request that the Court enter final approval of the Settlement and grant the related applications.

## II.    BACKGROUND

### A.    Procedural History

In this ERISA action, Plaintiffs principally allege that Defendants are fiduciaries of the Plan and breached duties they owed to the Plan and its participants and beneficiaries under ERISA by: (1) allowing unreasonable recordkeeping and administrative ("RK&A") fees to be charged to participants; and (2) selecting, retaining, and otherwise ratifying high-cost and poorly performing investments instead of offering prudent, readily available alternative investments.  *See generally* Second Amended Complaint ("Complaint"), ECF No. 18. Defendants have denied and vigorously defended against Plaintiffs' allegations.  Defendants assert that they have utilized a prudent process for administering the Plan, that the Plan's investment menu included only objectively prudent investment options, and that the Plan's participants paid objectively reasonable RK&A fees.

Plaintiffs filed the initial complaint in this action on June 5, 2020, see ECF No. 1, and an amended complaint ("Amended Complaint") on July 6, 2020.  *See* ECF No. 4.  Defendants moved to dismiss the Amended Complaint on September 4, 2020.  *See* ECF No. 13.  Prior to the resolution of Defendants' motion to dismiss the Amended Complaint, Plaintiffs filed the

Complaint on September 25, 2020 (ECF No. 18).  Defendants filed their Motion for Partial

Dismissal of Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(1) on October

9, 2020.  *See* ECF No. 20.  Pursuant to Rule 12(b)(1), Defendants argued that Plaintiffs lack

Article III standing to challenge investments in which they did not personally invest. On

October 30, 2020, the Court issued its Memorandum and Order denying Defendants' Motion to

Dismiss.  *See* ECF Nos. 34, 35.  In denying the partial dismissal motion, the Court held that

Plaintiffs have standing to bring each of their claims based on the Defendants' process

applicable to all funds offered to them.  On November 13, 2020, Defendants filed their answer

to Plaintiffs' Complaint.  *See* ECF No. 41.

On February 8, 2021, Plaintiffs filed a Motion for Class Certification (ECF No. 52).  On

March 8, 2021, the Court certified a class of participants and beneficiaries.  *See generally Boley

v. Universal Health Servs., Inc.* ("*Boley I*"), 337 F.R.D. 626 (E.D. Pa. 2021), *aff'd*, 36 F.4th 124

(3d Cir. 2022).  Defendants appealed the ruling to the United States Court of Appeals for the

Third Circuit, which granted their petition on May 18, 2021.  *See* ECF No. 71.  Oral argument

was heard in the Court of Appeals on February 11, 2022.  The Court of appeals affirmed the

District Court's decision to certify the Class in an opinion published on June 23, 2022.  *See

generally Boley v. Universal Health Servs., Inc.* ("*Boley II*"), 36 F.4th 124 (3d Cir. 2022).

Following the Court's order on Defendants' partial motion to dismiss, the Parties

commenced fact discovery, which included the exchange of written discovery requests and

productions of documents totaling over 150,000 pages, including productions by the Parties and

third parties.  *See* Declaration of Laurie Rubinow ¶¶ 3.  Defendants' productions consisted of

the Committee's deliberative materials related to Plan administration, as well as

communications between Committee members and others involved in the management and

administration of the Plan.  *See id.*  Plaintiffs deposed members of the Committee, a corporate

representative of Universal, and representatives of Centurion Group, LLC (now known as

Centurion, a Marsh & McLennan Agency LLC), the Plan's investment advisor during the Class

Period.  *See id.*  Defendants deposed each of the three Plaintiffs.  During the pendency of

Defendants' appeal of the Court's certification of the Class, the parties completed fact discovery

and Plaintiffs disclosed reports by three experts to Defendants.  *See id.*  Defendants disclosed

two expert reports to Plaintiffs, which responded to each of Plaintiffs' expert reports and set

forth certain affirmative opinions.  *See id.*  The parties took depositions of each expert and

completed all discovery.  *See id.*

On September 15, 2022, the Parties held a mediation session with Robert A. Meyer,

Esquire, of JAMS, a well-respected, neutral mediator with significant experience mediating

claims of the kind at issue in this Class Action.  The Parties exchanged briefs and follow-up

information concerning the merits of Plaintiffs' claims, Defendants' defenses, and potential

damages prior to and during the mediation, and reached an agreement in principle to resolve the

Class Action following additional negotiations shortly thereafter.  On September 28, 2022, less

than three months before the scheduled trial of this action, the Parties reported the Settlement to

the Court, and the Court granted leave to move for preliminary approval.  *See* ECF No. 108.

The Court granted Plaintiffs' motion for Preliminary Approval of Class Action Settlement on

October 31, 2022 and set a Final Approval Hearing for March 30, 2023.  *See* ECF 114.

**B.**      **The Settlement**

The Settlement provides that, in exchange for dismissal of the Class Action and a release

of claims, Defendants will pay $12,500,000.00 into a Qualified Settlement Fund, to be allocated

to Current Participants, Former Participants, Beneficiaries, and Alternate Payees of the Plan

pursuant to the Plan of Allocation.  *See* ECF No. 110-3, Settlement Agreement §§ 1.37, 4.4–4.5,

5.2–5.3; ECF No. 115-2 (Plan of Allocation).  The Settlement Agreement and the proposed

Preliminary Approval Order set forth the Notice Plan and describe Plaintiffs' anticipated

requests for payment of Attorneys' Fees and Costs to Class Counsel and for Case Contribution

Awards.  *See* ECF No. 110-3, Settlement Agreement, §§ 1.4, 1.9, 2.2.7, 6.1; ECF No. 115-1

(Notice).  Further, as discussed above, the Settlement Agreement provides for the approval of

the Settlement by an Independent Fiduciary.  *See* ECF No. 110-3, Settlement Agreement, §§

1.28, 2.1.

       **1.**       **Distribution of Settlement Fund to members of the Settlement Class**

The Settlement Fund will be distributed to Class Members in accordance with the Plan

of Allocation preliminarily approved by the Court.  To be eligible for a payment from the Net

Settlement Amount, one must be a Participant, an Authorized Former Participant, a Beneficiary,

or an Alternate Payee.  *See* ECF No. 110-3, Settlement Agreement § 1.3.

Participants, and Beneficiaries or Alternate Payees who have Active Accounts, will not

be required to submit a Former Participant Claim Form to receive a settlement payment.  *See id.*

§ 1.6.  Each Former Participant, and Beneficiary or Alternate Payee who does not have an

Active Account, will have the opportunity to elect a rollover of his, her, or their settlement

payment to an individual retirement account or other eligible employer plan account, which he,

she or they have identified on the Former Participant Claim Form, provided that such a person

supplies adequate information to the Settlement Administrator to effect the rollover.  Otherwise,

the Former Participant, or Beneficiary or Alternate Payee who does not have an Active

Account, will receive his, her or their settlement payment directly by check.  *See id.* § 1.7.

Nearly 54,000 Class Members will automatically receive the benefit of the Settlement.

*See* Supplemental Declaration of Cornelia Vieira Concerning the Mailing of the Settlement

Notice and Former Participant Claim Form ("Vieira Declaration") ¶ 8.  In addition, Strategic

Claims Services ("SCS") has received more than 6,800 Former Participant Claim Forms to date.

*See id.*  The deadline for submitting the Former Participant Claim Form is February 28, 2023.

*See* ECF 110-3, Settlement Agreement, § 2.2.5.  After payments have been issued to Class

members, any amount remaining in the Settlement Fund from uncashed checks after 180 days

will be distributed back to the Settlement Fund to be utilized for the benefit of the Plan's

participants, as set forth in the Plan of Allocation.

### 2.    Attorneys' fees, expenses, and case contribution awards

At the preliminary approval stage, Plaintiffs indicated that they would seek, and the

Court provisionally approved, attorneys' fees for Class Counsel in an amount not to exceed one-

third of the Gross Settlement Amount.  *See* Preliminary Approval Order ¶ 9.  In addition, the

Court provisionally approved Plaintiffs' anticipated request for reimbursement of reasonable

and necessary litigation expenses incurred by Class Counsel and carried for the duration of the

litigation.  *See id.*  The anticipated applications for attorneys' fees and litigation expenses were

reflected in the Notice distributed to the Settlement Class.  *See* ECF No. 115-1, Notice, at 2.  No

members of the Settlement Class have objected to Plaintiffs' anticipated requests for attorneys'

fees and expenses.  The Independent Fiduciary's report will ultimately weigh in on the

requested attorneys' fees, expenses, and service awards, providing the Court another basis to

evaluate the requested distributions from the Settlement Fund.

### C.    Class Notice

SCS began contacting the 97,807 Class Members following the Court's Order entered

on October 31, 2022, approving of their services.  Vieira Decl. ¶ 3.  SCS organized, printed, and

mailed notice to 97,807 Class Members, emailed notice to those Class Members for whom valid

email addresses were provided, established and maintained a settlement website for Class

Member access, re-mailed notices returned with forwarding address, and skip-traced all notices

returned as undeliverable. *Id.*  SCS also tracked objections, entered and processed Former

Participant Claim Forms, and responded to phone calls made by Class members on their toll-

free line.  *Id.*

SCS identified 97,807 Class Members, 43,940 of whom were identified as non-active

and were mailed the Court-approved Notice of Pendency of Class Action and Proposed

Settlement along with a Former Participant Claim Form.  *Id.* ¶ 4.  The remaining Settlement

Class members only received the Notice because they do not need to fill out a claim form and

will receive their benefit automatically.  *Id.* ¶ 8.  SCS also emailed the 86,883 Class Members

for whom email addresses were provided.  *Id.* at ¶ 3.[2]

III.    <u>**ARGUMENT**</u>

A.      **The Court Should Maintain Certification of the Settlement Class and Grant
Final Approval of the Settlement**

Under Rule 23(e), Courts in this Circuit and nationwide follow a two-step process in

considering the approval of class action settlements.  "At the first step, a court holds a

preliminary approval hearing to determine whether any obvious issues exist, determine whether

the proposed class should be approved for settlement purposes (if necessary), and determine

whether the parties' proposed notice plan is sufficient."  *Sweda v. Univ. of Pennsylvania*, 2021

WL 2665722, at *1 (E.D. Pa. June 29, 2021) (Pratter, J.) (citing *Leap v. Yoshida*, 2015 WL

619908, at *3 (E.D. Pa. Feb. 15, 2015)).  If the court orders preliminary approval of the

---

[2]SCS also discovered that it had sent notices with a typo to Class Members of the mistaken date
of February 28, 2022, instead of February 28, 2023.  After notifying Class Counsel, SCS
corrected the typo and sent a correction notice via postcard or email to all non-Active Class
Members who must submit the form to collect payment at no cost to the Plan or the Class.

settlement, "an initial presumption of fairness" arises.  *Leap*, 2015 WL 619908, at *3.  "[A] settlement is entitled to an initial presumption of fairness where it resulted from arm's-length negotiations between experienced counsel, there was sufficient discovery, and there were no objectors and only a small percentage of opt-outs."  *Galt v. Eagleville Hosp.*, 310 F. Supp. 3d 483, 493 (E.D. Pa. 2018).

At the "second step" of the process, the "court conduct[s] a final fairness hearing in which class members, having received notice of the proposed settlement, may voice any objections they may have."  *Sweda*, 2021 WL 2665722, at *2.  The court may grant final approval after a hearing only if the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003).  Under Rule 23(e)(2), in order to find a settlement "fair, reasonable, and adequate" at the final approval hearing, the court must hold that (A) "the class representatives and class counsel have adequately represented the class," (B) "the proposal was negotiated at arm's length," (C) "the relief provided for the class is adequate," and (D) "the proposal treats the class members equitably relative to each other."  Courts in this circuit also measure whether a settlement is "fair, reasonable, and adequate" through use of the *Girsh* factors:

> (1) the complexity, expense and likely duration of the litigation;
>
> (2) the reaction of the class to the settlement;
>
> (3) the stage of the proceedings and the amount of discovery completed;
>
> (4) the risks of establishing liability;
>
> (5) the risks of establishing damages;
>
> (6) the risks of maintaining the class action through trial;
>
> (7) the ability of the defendants to withstand a greater judgment;
>
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9) the range of reasonableness of the settlement fund to a possible recovery in
light of all the attendant risks of litigation.

*In re Processed Egg Prod. Antitrust Litig.*, 2017 WL 5585717, at *5 (E.D. Pa. Nov. 20, 2017)

(citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)).  "A court may approve a settlement

even if it does not find that each of these factors weighs in favor of approval."  *In re New Jersey*

*Tax Sales Certificates Antitrust Litig.*, 750 F. App'x 73, 77 (3d Cir. 2018) (citing *Halley v.*

*Honeywell Int'l, Inc.*, 861 F.3d 481, 489-90, 491 (3d Cir. 2017)).

The Court has already found that the Settlement is sufficiently fair, reasonable, and

adequate to warrant preliminary approval, and thus, the Settlement is subject to the "initial

presumption of fairness."  *Leap*, 2015 WL 619908, at *3; *see also In re Gen. Motors Corp.*

*Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995).  There is no

reason to reach a different conclusion on final approval, especially given the overwhelmingly

positive reception of the Settlement Class, as Class Counsel have fielded inquiries and provided

claims assistance to numerous members of the Settlement Class on a daily basis, and only two

members of the Settlement Class have objected and neither gives substantive grounds for

denying approval of the Settlement.

    1.    **The Rule 23(e)(2) requirements weigh in favor of final approval of
the Settlement [3]**

    i.    **The relief provided for the class is adequate**

To determine whether the "relief provided for the class is adequate," the Court considers

"the costs, risks, and delay of trial and appeal," the "effectiveness of any proposed method of

---

[3]Plaintiffs incorporate their arguments from Plaintiffs' Memorandum of Law in Support of
Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, in which
Plaintiffs discussed the adequacy of the class representatives and class counsel's representation
of the class and the "arm's length" negotiations in depth.  Preliminary Approval Memo., at 9,
19–20.

distributing relief to the class, including the method of processing class-member claims," the "terms of any proposed award of attorney's fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C)(i-iv).

As with any complex litigation, trial and appeal in this case would be risky and costly. While any trial and potential appeal carries some risk of delay and expense, the risk is especially great in this case due to the several recent trial verdicts in ERISA breach of fiduciary duty actions that have been the subject of complex appeals.  *See Sacerdote v. New York Univ.*, 9 F.4th 95 (2d Cir. 2021), *cert. denied*, 142 U.S. 1112 (2022); *Ramos v. Banner Health*, 1 F.4th 769 (10th Cir. 2021).  As for the "proposed method of distributing relief to the class," the Plan of Allocation in this case is highly effective and is substantially similar to plans approved by courts in analogous ERISA litigation.  *See, e.g., Blackmon v. Zachry Holdings, Inc.*, No. 5:20-cv-00988-ESC, ECF No. 82 (N.D. Tex. Aug. 5, 2022); *Jones v. Coca-Cola Consolidated Inc.*, No. 3:20-cv00654-FDW-DSC, ECF No. 98 (W.D.N.C. Mar. 8, 2022); *Terraza v. Safeway Inc.*, No. 16-cv-03994-JST, ECF No. 268 (N.D. Cal. Sept. 8, 2020) ("Settlement Scores will be determined by calculating the Class Member's year-end account balance during the Class Period and dividing that amount by the total sum of year-end asset amounts in the Plan during the Class Period"); *see also* ECF No. 115-2, Plan of Allocation.

Next, the Settlement does not inordinately compensate Class Counsel, and the relief and related applications remain within the ranges preliminarily approved by the Court.  *See* ECF No. 114, Preliminary Approval Order at ¶ 31. The Settlement provides for fees for Class Counsel that are consistent with other ERISA cases in this District and around the country.  *See e.g.*, *Pinnell v. Teva Pharms. USA, Inc.*, 2021 WL 5609864, at *2 (E.D. Pa. June 11, 2021) (awarding attorney's fees in the amount of one-third of the common fund settlement).  Finally,

there is no "agreement required to be identified under Rule 23(e)(2)(C)(iv)," making the Rule

23(e)(2)(C)(iv) requirement irrelevant.  Preliminary Approval Order ¶ 11.

### ii. The Plan of Allocation treats members of the Settlement Class equitably

The Plan of Allocation provides recovery to members of the Settlement Class on a *pro rata* basis, with no preferential treatment for Plaintiffs or any segment of the Settlement Class. ECF No. 115-2, Plan of Allocation.  The Plan of Allocation provides for the distribution of funds to each member of the Settlement Class with a formula based on the losses to that member's account, and those with active accounts will receive their share of the settlement proceeds automatically in their accounts in the Plan.  The formula will be applied to each Settlement Class member on equal terms.  Thus, the proposed Plan of Allocation treats Settlement Class members equitably relative to each other.

### 2. The *Girsh* factors weigh in favor of final settlement

### i. The complexity, expense and likely duration of the litigation

The first factor "captures the probable costs, in both time and money, of continued litigation."  *In re Processed Egg Prod. Antitrust Litig.*, 2017 WL 5585717, at *6 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004)).

As discussed in detail in the Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Memo.") the road ahead in this action absent settlement is complex, lengthy, and uncertain.  Preliminary Approval Memo., at 11–12.  The trial of this litigation was scheduled to be eight days, and it is almost certain that there would be a complex appeal.  Due to the complexity of subject matter of this action, as well as the expense and delay of further litigation, this factor weighs in favor of final approval.

### ii. The reaction of the Settlement Class to the Settlement

This factor weighs in favor of settlement, even if there are a few objectors, when a greater part of the class shows interest in the settlement.  *See In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 438 (3d Cir. 2016).  For example, in *Nat'l Football League*, the Court found that the second *Girsh* factor weighed in favor of settlement approval in part due to the fact that "only approximately 1% of class members objected and approximately 1% of class members opted out," and because "more than 5,200 class members had signed up to receive additional information about the settlement and the settlement website had more than 64,000 unique visitors."  However, this factor may weigh against settlement if, unlike here, there is an overall negative reaction to the lawsuit.  *Id.*

Out of the 97,807 class participants, only two have objected—substantially less than 1% of the Settlement Class members who received the Notice.  Of those purported objectors, one simply requested more information as to the nature of the lawsuit, claiming that the "Notice states only that the claim is that the 'administration of the Plan violated ERISA,'" but does not state exactly "*how* ERISA was allegedly violated."  ECF No. 118 (Whitesell Objection).  Despite this objector's contentions, the website established by the Settlement Administrator includes the Complaint and other litigation documents that detail the claims that would be resolved by virtue of the Settlement.  In addition, Class Counsel have responded to any inquiries from members of the Settlement Class seeking more information about the claims and Settlement.  *See generally* Declaration of James C. Shah ("Shah Decl.").  Moreover, Class Counsel has specifically communicated with this objecting Class Member and confirmed that, once the Class member and her spouse, reviewed the information contained on the settlement website, the questions they had regarding the nature of the case and the claims at issue were

answered.  Shah Decl. ¶ 5.  The other objector indicates that she does not have any complaints about the administration of her retirement account and would not be interested in the Settlement.  *See* ECF No. 117 (Wolfram Objection).  Although Class Counsel has not been successful in contacting this Class member, *see* Shah Decl. ¶ 4, that objection does not contest the merits of the Settlement but, rather, essentially amounts to disagreement with the merits of the underlying litigation.  Settlement of breach of fiduciary duty claims on a Plan-wide basis is consistent with ERISA's remedial scheme; accordingly, the existence of solitary members of the Settlement Class who are uninterested in the Settlement does not undermine the approval of the Settlement and Plan of Allocation, which provide relief to all qualifying participants and beneficiaries in the Plan.  In addition, the fact that, as of this date, SCS has received 6,800— meaning upwards of 60,000 members of the Settlement Class will receive proceeds from the Settlement—Former Participant Claim Forms demonstrates a positive reaction to the Settlement that outweighs the small number of objections.  *See* Vieira Decl. ¶ 8.  As there are only two objectors whose objections are not based on substantive grounds, *Girsh* factor number two weighs in favor of final approval of the Settlement.

### iii. The stage of the proceedings and the amount of discovery completed

The third *Girsh* factor measures the "degree of case development that class counsel have accomplished prior to settlement" so that the courts "can determine whether counsel had an adequate appreciation of the merits of the case before negotiating."  *Gen. Motors*, 55 F.3d at 813.  Since all discovery has been completed in this case, including significant exchanges of written discovery, depositions of fact witnesses for the Parties and third parties, disclosure of expert reports, and depositions of expert witnesses, as well as preparation for the eight-day trial scheduled at the time the Parties negotiated the Settlement, Class Counsel had more than

enough of an understanding of the merits of Plaintiffs' claims and Defendants' defenses prior to negotiation of the Settlement.  This factor, therefore, weighs in favor of settlement.

### iv.  The risks of establishing liability and damages

The fourth and fifth *Girsh* factors ask the court to "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement."  *Warfarin*, 391 F.3d at 537.  This requires weighing "the likelihood of success and the potential damage award if the case were taken to trial against the benefits of immediate settlement."  *In re Prudential Insurance Company*, 148 F.3d 283, 319 (3d Cir. 1998).  The "damages" *Girsh* factor aims to show that settling would be more beneficial than litigating the action.  *In re Processed Egg Prod. Antitrust Litig.*, 2017 WL 5585717, at *7 (citing *Gen. Motors*, 55 F.3d at 814).

As discussed at the preliminary approval stage, the Parties agreed to the Settlement less than three months before the trial scheduled for December 13, 2022.  *See* Preliminary Approval Memo., at 12–13.  Accordingly, with all discovery complete, the Parties had substantially developed their cases for and against liability and damages.  The opinions of the Parties' experts as to issues going to liability and damages are at loggerheads and a trial presents risks to both Parties that the opinions of their adversary's experts will be given more credence.  Although Plaintiffs are confident that the evidentiary record, including expert opinions and testimony, is more than sufficient to prove their claims, the Settlement acknowledges the risk that the Court might embrace Defendants' arguments against liability or "very different damage estimates."  *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 506 (W.D. Pa. 2003).  In fact, courts in this Circuit have acknowledged that trials of ERISA breach of fiduciary duty actions present

particularly risky propositions, given the "complex and contested questions of law and fact." *In re Merck & Co., Inc., Vytorin ERISA Litig.*, 2010 WL 547613, at *8 (D.N.J. Feb. 9, 2010).

This Court has found that it "need not delve into the intricacies of the merits of each side's arguments, but rather may give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action." *Vasco v. Power Home Remodeling Grp. LLC.*, 2016 WL 5930876, at *6 (E.D. Pa. Oct. 12, 2016) (quotation marks and citations omitted). As discussed herein, the claims and defenses of the Parties have been developed through several years of active litigation and trial preparation, and Class Counsel are well-positioned to understand the risks of establishing liability and damages.

### v. The risks of maintaining the class action through trial

Because the "value of a class action depends largely on the certification of the class" due to the "aggregation of the claims" and the "pool[ing] [of] litigation resources," it is necessary for the court to weigh the likelihood of the class maintaining certification through trial. *Gen. Motors*, 55 F.3d at 817. This *Girsh* factor, however, requires "minimal consideration." *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d at 440 (3d Cir. 2016). For a settlement class, the "district court need not inquire whether the case, if tried, would present intractable management problems[,] . . . for the proposal is that there be no trial." *Id.* (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Defendants have vigorously contested class certification in this litigation, opposing Plaintiffs' certification motion and, after entry of the Court's class certification order, appealing the issue of certification under Rule 23(f).

15

Indeed, because the Court has already certified the Class, finding each prerequisite met, including the absence of significant management issues of the class if it were brought to trial, this factor weighs in favor of final approval of the Settlement.

### vi.     The ability of the defendants to withstand a greater judgment

*Girsh* also instructs consideration of "whether the defendants could withstand a judgment for an amount significantly greater than the settlement." *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 535 (3d Cir. 2004). The Court of Appeals has explained, "in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 323 (3d Cir. 2011). This is because, "when there is no 'reason to believe that Defendants face any risk of financial instability[,] . . . this factor is largely irrelevant.'" *In re Nat'l Football League Players Concussion Inj. Litig*, 307 F.R.D. 351, 394 (E.D. Pa. 2015) (quoting *Reibstein v. Rite Aid Corp*., 761 F.Supp.2d 241, 254 (E.D. Pa. 2011)). Thus, "the settling defendant's ability to pay greater amounts [may be] outweighed by the risk that the plaintiffs would not be able to achieve any greater recovery at trial." *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 632 (E.D. Pa. 2004). This factor is most relevant when the defendant's professed inability to pay is used to justify the amount of the settlement. *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 440 (3d Cir. 2016), as amended (May 2, 2016). Although Universal could likely withstand a judgment larger than the Settlement, the risk, expense, and delay of continued litigation and the value of the immediate relief provided by the Settlement presents more important considerations. *See* Preliminary Approval Memo., at 13–14.

16

###### vii. The range of reasonableness of the settlement fund in light of the best possible recovery and attendant risks

The final *Girsh* factor essentially compares the proposed recovery to a hypothetical likely recovery in the event of trial: "[T]he present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement." *Vasco*, 2016 WL 5930876, at *7 (citing *In re Nat'l Football League*, 821 F.3d at 440 (E.D. Pa 2015)). Here, realistically recoverable damages range from an average of $9,331,087 to $23,903,153, with a midpoint of $16,617,120; accordingly, the Settlement recovery amounts to over 75% of the midpoint of the average of realistically recoverable damages. *See* Rubinow Decl. ¶ 17. This is an excellent result from both a percentage recovery perspective and a gross perspective—as Defendants have noted in these proceedings, this action is one of several challenging the inclusion of the Fidelity Freedom Funds in large defined contribution retirement plans, and the Settlement would represent the largest recovery in an action involving the Fidelity Freedom Funds to date. Indeed, this proposed recovery is within a range recently approved by a court in this District in an ERISA breach of fiduciary duty action. *See Sweda v. University of Pennsylvania*, 2021 WL 5907947, at *5 (E.D. Pa. Dec. 14, 2021) (finding settlement amount fell within range of reasonableness where it represented "just over half of the best possible recovery" for the plaintiffs' strongest claims). Moreover, the Settlement was negotiated at arm's-length with the assistance of a mediator experienced in disputes of this nature and, if preliminarily approved, the Settlement will be reviewed by an independent fiduciary, providing the Court with several touchstones for reaching a finding of reasonableness at this stage and at final approval. *See* Preliminary Approval Memo., at 14–15.

**B.      The Plan of Allocation Should be Finally Approved**

The proposed plan of allocation must be "fair, reasonable, and adequate." *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 648 (E.D. Pa. 2015).  "In general, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *Id.* (quoting *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000)).  A court's primary goal should be to "ensure that the fund distribution is fair and reasonable to all participants in the fund." *Id.* (quoting *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 964 (3d Cir. 1983)).

As discussed at the preliminary approval stage, the Plan of Allocation is "fair, reasonable, and adequate."  Preliminary Approval Memo., at 16–17.  The Plan of Allocation provides recovery to members of the Settlement Class on a *pro rata* basis, with no preferential treatment for Plaintiffs or any segment of the Settlement Class, and is consistent with ERISA standards to treat plan participants alike, obviating the risk of intraclass conflicts.  This is substantially similar to plans approved by courts in analogous ERISA litigation.  *See, e.g., Blackmon*, No. 5:20-cv-00988-ESC, ECF No. 82 (N.D. Tex. Aug. 5, 2022); *Coca-Cola Consolidated Inc.*, No. 3:20-cv00654-FDW-DSC, ECF No. 98 (W.D.N.C. Mar. 8, 2022); *Terraza v. Safeway Inc.*, No. 16-cv-03994-JST, ECF No. 268 (N.D. Cal. Sept. 8, 2020) ("Settlement Scores will be determined by calculating the Class Member's year-end account balance during the Class Period and dividing that amount by the total sum of year-end asset amounts in the Plan during the Class Period").  Members of the Settlement Class with active accounts in the Plan will receive the distributions of settlement proceeds to which they are entitled automatically in their accounts in the Plan.  In light of its equitable treatment of the

Settlement Class, the Court should find that the Plan of Allocation is fair, reasonable, and adequate.

**C.      The Court Should Maintain Certification of the Class through Entry of a Final Approval Order**

In certifying the Class for litigation purposes, the Court previously found that each of the prerequisites of Rule 23(a) were satisfied and that the Class should be certified under Rule 23(b)(1).  *See Boley I*, 337 F.R.D. at 630.  The Court's certification order was affirmed by the Court of Appeals.  *See Boley II*, 36 F.4th at 137.  The Court also preliminarily certified the Class in its Order approving the Settlement Agreement.  Preliminary Approval Order, ¶ 15.  The Court has already found the prerequisites to Class Certification are met and certified the following class:

> All participants and beneficiaries in the Universal Health Services, Inc. Retirement Savings Plan at any time on or after June 5, 2014 to the present ("Class Period"), including a beneficiary of a deceased person who was a participant in the Plan at any time during the Class Period.

ECF No. 57, Order Granting Class Certification.  None of the material circumstances underlying the Court's order certifying the Class or maintaining certification at the preliminary approval phase have changed.  Thus, the Court should maintain certification through entry of a final judgment.

**IV.      <u>CONCLUSION</u>**

For the reasons discussed herein and all those appearing on the record, Plaintiffs request the Court enter an Order that: (1) finally approves the Settlement with Defendants; (2) maintains certification of the Settlement Class; (3) finds the manner in which the Settlement Class was notified of the Settlement was the best notice practicable under the circumstances, and is otherwise fair and adequate; and (4) approves the Plan of Allocation.

In sum, the Settlement embodies the spirit of compromise of contested claims favored within the Third Circuit, and was the product of arm's-length negotiations between adversaries and experienced and well-informed counsel after protracted, contested litigation.  Final approval is warranted under all of the circumstances.

Plaintiffs stand ready to provide any additional information that the Court may require in connection with its consideration of the Motion.

DATED: February 15, 2023                                   Respectfully submitted,

                                                          /s/ James C. Shah
                                                          James C. Shah
                                                          Alec J. Berin
                                                          MILLER SHAH LLP
                                                          1845 Walnut Street, Suite 806
                                                          Philadelphia, PA 19103
                                                          Telephone: (866) 540-5505
                                                          Facsimile: (866) 300-7367
                                                          Email: jcshah@millershah.com
                                                                 ajberin@millershah.com

                                                          James E. Miller
                                                          Laurie Rubinow
                                                          MILLER SHAH LLP
                                                          65 Main Street
                                                          Chester, CT 06412
                                                          Telephone: (866) 540-5505
                                                          Facsimile: (866) 300-7367
                                                          Email: jemiller@millershah.com
                                                                 lrubinow@millershah.com

                                                          Kolin C. Tang
                                                          MILLER SHAH LLP
                                                          19712 MacArthur Blvd., Suite 222
                                                          Irvine, CA 92612
                                                          Telephone: (866) 540-5505
                                                          Facsimile: (866) 300-7367
                                                          Email: kctang@millershah.com

Mark K. Gyandoh
CAPPOZI ADLER
312 Old Lancaster Road
Merion Station, PA 19066
Telephone: (610) 890-0200
Fax: (717) 233-4103
Email: markg@capozziadler.com

Donald R. Reavey
CAPPOZI ADLER
2933 North Front Street
Harrisburg, PA 17110
Telephone: (717) 233-4101
Email: donr@capozziadler.com

*Attorneys for Plaintiff, the Plan,
and the Class*