**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARY K. BOLEY, KANDIE SUTTER,** | : | |
| **and PHYLLIS JOHNSON, Individually** | : | |
| **and as representatives of a class of** | : | |
| **similarly situated persons, on behalf of** | : | |
| **the UNIVERSAL HEALTH SERVICES,** | : | **CIVIL ACTION** |
| **INC. RETIREMENT SAVINGS PLAN** | : | |
| | : | |
| **v.** | : | **NO. 20-2644** |
| | : | |
| **UNIVERSAL HEALTH SERVICES,** | : | |
| **INC.; THE UHS RETIREMENT PLANS** | : | |
| **INVESTMENT COMMITTEE; and** | : | |
| **DOES No. 1-10, Whose Names Are** | : | |
| **Currently Unknown** | : | |

## Findings of Fact and Conclusions of Law

**KEARNEY, J.**                                                    **March 30, 2023**

We enter findings of fact and conclusions of law in support of the accompanying Order granting Plaintiffs' uncontested Motions for final approval of a class settlement and dismissal of the Class Action (ECF Doc. No. 119) and for an award of attorneys' fees, attorneys' expenses, and case contribution awards (ECF Doc. No. 120), and after today's noticed Hearing on Final Approval:

1.      We enjoy subject matter jurisdiction over all parties under 28 U.S.C. § 1331, including over all members of the Settlement Class.[1]

2.      Mary K. Boley, Kandie Sutter, and Phyllis Johnson, on their own behalf and for similarly situated participants and beneficiaries of the Universal Health Services, Inc. Retirement Savings Plan, sued Universal Health Services, Inc, UHS Retirement Plans Investment Committee, and Does No. 1-10 for breach of their fiduciary duties under the Employee Retirement Income Security Act.[2]

3.      We denied Defendants' Motion to dismiss on October 30, 2020 and set pre-trial obligations on November 19, 2020.[3]

4.      We certified a class action for trial in our March 8, 2021 Order. The Class included: All participants and beneficiaries of the Plan, at any time during the Class Period (June 5, 2014, through the date the Preliminary Approval Order was entered by the Court), including any beneficiary of a deceased person who was a participant in the Plan at any time during the Class Period, and any Alternate Payees, in the case of a person subject to a Qualified Domestic Relations Order who was a participant in the Plan at any time during the Class Period. The Class shall exclude all Defendants.[4]

5.      We appointed Mary K. Boley, Kandie Sutter, and Phyllis Johnson as Class Representatives for the Class, and Miller Shah LLP and Capozzi Adler, P.C. as Class Counsel for the Class.

6.      Defendants appealed our March 8, 2021 Order granting class certification under Federal Rule of Civil Procedure 23(f). Our Court of Appeals affirmed our March 8, 2021 Order on June 23, 2022.[5]

7.      We set final discovery obligations upon remand and set a date certain trial beginning December 13, 2022.[6]

### *Findings of fair, adequate, and reasonable settlement.*

8.      The parties notified us on September 28, 2022 of a settlement.[7]

9.      The parties moved for preliminary approval of a class action settlement on October 20, 2022.[8]

10.     We granted Plaintiffs' unopposed Motion for preliminary approval of a class action settlement following a noticed Hearing on October 31, 2022.[9]

11.    All requirements of the Class Action Fairness Act, 28 U.S.C. § 1711, *et seq.*, have been met.

12.    We maintain certification of the action as a class action under Federal Rules of Civil Procedure 23(a) and (b)(1) for reasons consistent with our March 8, 2021 Memorandum and Order and October 31, 2022 Order.

13.    We approved Strategic Claims Services as the Settlement Administrator to provide and manage notice to the Class.[10]

14.    Strategic Claims Services provided the Notice to all 97,804 Class Members through mailings, and duplicated in email to those with email addresses, and the settlement website.

15.    We received two objections to the Settlement: one opt-out and one alleging a vague Notice did not put the Class Member on notice of the subject of this case. Counsel represented, and we confirmed at our Hearing, the two objections have been resolved and there are no outstanding objections concerning the Settlement.[11]

16.    Counsel today represented his office addressed over nine hundred inquiries by email and phone from Class Members.

17.    The Settlement Class received proper and adequate notice of the Settlement, the Fairness Hearing, Class Counsel's application for Attorneys' Fees and Expenses and for the Case Contribution Awards to the Class Representatives, and the Plan of Allocation, such notice having been given in accordance with the Preliminary Approval Order.

18.    The Notice included individual notice to all members of the Settlement Class who could be identified through reasonable efforts, as well as notice through the dedicated Settlement Website on the internet, and provided valid, due, and sufficient notice of these proceedings and

of the matters set forth in this Order, and included sufficient information regarding the claims procedure for Former Participants, Beneficiaries, and Alternate Payees without Active Accounts and the procedure for the making of objections.

19.    The Class Notice constitutes the best notice practicable under the circumstances and fully satisfies the requirements of Rule 23 and the requirements of due process.

20.    After applying each of the factors affirmed by our Court of Appeals in *In re Nat'l Football League Players Concussion Injury Litigation*, we approve the Settlement agreement and find the settlement is fair, reasonable, and adequate to all members of the Settlement Class.[12]

21.    We determine whether a proposed class action settlement is fair, reasonable, and adequate by considering a variety of factors: "(1) The complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."[13]

22.    The first factor supports settlement because this breach of fiduciary duty action is complex. Litigation of these issues would have likely resulted in significant expense but for the Settlement.

23.    The second factor supports settlement because the Class responded favorably to the settlement, as there are only two objectors out of 97,807 Class Members and both have been resolved.

4

24.    The third factor supports settlement because the Parties have an adequate understanding of the issues after fulsome discovery just weeks from trial. The Lead Plaintiffs opposed Defendant's motions to dismiss. They exchanged written discovery, conducted depositions of fact witnesses for the Parties and third parties, disclosed expert reports, deposed expert witnesses, and began preparing for the eight-day trial scheduled at the time the Parties negotiated the Settlement including initial witness preparation efforts.

25.    The fourth and fifth factors are satisfied because the claims and defenses of the Parties have been developed through several years of active litigation and trial preparation, and Class Counsel are well positioned to understand the risks of establishing liability and damages.

26.    As to the sixth factor, settlement precludes the risk associated with trial.

27.    The seventh factor is neutral as the Parties do not adduce evidence Defendant would be unable to pay a greater judgment, but this factor alone does not undermine the reasonableness of the settlement.

28.    The eighth and ninth factors support settlement, as Class Counsel admits it faces considerable risks in proving both liability and damages.

29.    The settlement is a fair recovery because it falls within the normal range for ERISA settlements.

30.    We may also consider factors instructed by our Court of Appeals known as *Prudential* factors: (1) maturity of the underlying substantive issues, including discovery and factors bearing on counsel's ability to evaluate likelihood of success; (2) existence and outcome of other class claims; comparing recovery for individual v. class; the right to opt-out; reasonable attorney's fees; and processing of claims.[14]

5

31.    Our consideration of the *Prudential* factors also confirms the fairness of the Settlement Agreement. The Parties proposed a fair processing, there are no other claims, and the class did not opt out although offered an opportunity to do so.

32.    Under Federal Rule of Civil Procedure 23(c), we find the Settlement embodied in the Settlement Agreement is fair, reasonable, and adequate to the Plan and the Settlement Class, and more particularly find:

(a)    The parties negotiated vigorously and at arm's length, under the auspices of an experienced, neutral mediator, by Defense Counsel on the one hand, and by Class Counsel on behalf of the Class Representatives and the Settlement Class, on the other hand;

(b)    Class Representatives and Defendants had sufficient information to evaluate the settlement value of the Class Action;

(c)    If the Settlement had not been achieved, Class Representatives and the Settlement Class faced the expense, risk, and uncertainty of extended litigation;

(d)    The amount of the Settlement—twelve million five hundred thousand dollars ($12,500,000.00)—is fair, reasonable, and adequate, considering the costs, risks, and delay of trial and appeal.

(e)    The method of distributing the Net Settlement Amount is efficient, requires no filing of claims for Current Participants, Beneficiaries, and Alternate Payees with Active Accounts, and requires only a modest Former Participant Claim Form for Former Participants, Beneficiaries, and Alternate Payees without Active Accounts.

(f)    The Settlement terms related to attorneys' fees and expenses, and Case Contribution Awards to Class Representatives, do not raise questions concerning fairness of the Settlement, and there are no agreements, apart from the Settlement, required to be considered under Federal

6

Rule of Civil Procedure 23(e)(2)(C)(iv). The Gross Settlement Amount is within the range of settlement values obtained in similar cases;

(g)    The Settlement Agreement provides, in exchange for dismissal of the Class Action and a release of claims, Defendants will pay a Gross Settlement Amount of $12,500,000.00 into a Qualified Settlement Fund, to be allocated to Current Participants, Former Participants, Beneficiaries, and Alternate Payees of the Plan under the Plan of Allocation. (ECF Doc. No. 110-3 at 47–52).

(h)    At all times, the Class Representatives and Class Counsel have acted independently of Defendants and in the interest of the Settlement Class; and

(i)    We duly considered the mooted objections to the Settlement and addressed a question raised by one Class Member during our final approval hearing.

30.    The Settlement Agreement shall be implemented in accord with its terms and conditions.

### *We approve the Plan of Allocation under the Settlement Agreement.*

33.    The Plan of Allocation is finally approved as fair, reasonable, and adequate. The Settlement Administrator shall distribute the Net Settlement Amount in accordance with the Plan of Allocation and the Settlement Agreement.

34.    The Settlement Administrator shall have final authority to determine the share of the Net Settlement Amount to be allocated to each Class Member in accord with the approved Plan of Allocation.

35.    Plaintiffs and Claims Administrator shall work in good faith to distribute from the Settlement Funds to the Settlement Class and Lead Counsel by **May 31, 2023**.

### *We approve the Releases.*

36.     The releases and covenants not to sue set forth in the Settlement Agreement, including but not limited to Article 7 of the Settlement Agreement, together with the definitions contained in the Settlement Agreement relating thereto, are expressly incorporated herein in all respects.

37.     The Releases are effective as of the Settlement Effective Date. As of the Settlement Effective Date, the Plan, the Class Representatives, and the Class Members (and their respective heirs, beneficiaries, executors, administrators, fiduciaries, estates, past and present partners, officers, directors, predecessors, successors, assigns, agents, and attorneys) fully, finally, and forever settle, release, relinquish, waive, and discharge all Released Parties (including Defendants) from all Released Claims, regardless of whether any Class Member may discover facts in addition to or different from those which the Class Members or Class Counsel now know or believe to be true with respect to the Class Action and the Released Claims; and regardless of whether any Class Member receives a monetary benefit from the Settlement, actually received the Settlement Notice, filed an objection to the Settlement or to any application by Class Counsel for an award of Attorneys' Fees and Expenses; and regardless of whether the objections or claims for distribution of any such Class Member have been approved or allowed.

38.     The Class Representatives, Class Members, and the Plan settle, release, relinquish, waive, and discharge any and all rights or benefits they may now have, or in the future may have, under any law relating to the releases of unknown claims, including without limitation, Section 1542 of the California Civil Code, providing: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that if known by him or her would have materially

8

affected his or her settlement with the debtor or released party." The Class Representatives, Class Members, and the Plan with respect to the Released Claims also waive any and all provisions, rights and benefits conferred by any law or of any State or territory within the United States or any foreign country, or any principle of common law, which is similar, comparable or equivalent in substance to Section 1542 of the California Civil Code.

39.    The Class Representatives, the Class Members, and the Plan, acting individually or together, or in combination with others, are permanently and finally barred and enjoined from suing the Released Parties in any action or proceeding alleging any of the Released Claims.

40.    Each Class Member releases the Released Parties, Defense Counsel, and Class Counsel for any claims, liabilities, and attorneys' fees and expenses arising from the allocation of the Gross Settlement Amount or Net Settlement Amount and for all tax liability and associated penalties and interest as well as related attorneys' fees and expenses.

### *We approve a class counsel fee, expenses, and case contribution awards.*

41.    We conduct a "thorough judicial review" to determine the amount of an award to counsel.[15]

42.    "Judicial deference to the results of private negotiations is undoubtedly appropriate for many settlements, but not for class action settlements, including their attorney fee terms. 'That the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief provided to the class in the agreement does not detract from the need carefully to scrutinize the fee award.'"[16]

43.    In a common-fund class action, our Court of Appeals generally favors awarding fees applying a percentage-of-the-recovery method.[17] We find a reward based on a percentage of recovery is appropriate.

44.    We appreciate a multi-million-dollar fee award could fairly raise questions as to appropriate work allocation, billing rates, and hours invested in the matter given the understood risks.

45.    We scrutinize the fee request including the requested common fund percentage compared to what class counsel would charge as its normal hourly rates for similar matters.

46.    Our scrutiny confirms Class Counsel conducted extensive investigation, research, focused discovery and evaluated respective risks of further litigation, additional costs, and delay associated with further prosecution of this action.

47.    The parties reached the Settlement Agreement because of intensive, arms-length negotiations.

48.    Counsel reached agreement on the settlement terms before an experienced Mediator without addressing the attorney's fees.

49.    Class Counsels' fees are reasonable and necessary for the benefit of the Class.

50.    As a cross-check, Class Counsel billed $2,701,593.50 in time at their then-current rates for 4,502.4 hours of effort representing an average hourly rate of approximately $600.00.

51.    The 1.46 lodestar multiplier is analogous to other complex fiduciary duty actions and is proper given Class Counsel pursued this matter on a contingent basis, through numerous motions, substantial fact and expert discovery, and an appeal under Rule 23(f).

52.    Class Counsel provided competent representation for the Class warranting an award of one-third of the total Settlement amount equaling $4,166,666.67.

53.    Class Counsel demonstrated a basis to reimburse demonstrated expenses of $300,000.

10

54.    Lead Plaintiffs did not demonstrate an evidentiary basis to award the requested $15,000 case contribution award to each lead Plaintiff.

55.    Class Counsel offered an affidavit summarizing the Lead Plaintiffs' roles.[18]

56.    Class Counsel expanded on the limited conclusory information during our hearing. Counsel represented: direct class member contact with Mary K. Boley; more direct effort from Mary K. Boley; each Lead Plaintiff participated in regular status conferences including in approving the settlement terms; each Lead Plaintiff began preparing for their trial testimony in sessions with Class Counsel; each Lead Plaintiff participated in pre-complaint investigatory steps; Class Counsel did not offer or suggest additional compensation either in a retainer agreement or during the course of the case in exchange for testimony or support of the Counsel's decisions; and, the Lead Plaintiffs are not colluding with each other.

57.    But we also have concerns with the size of the requested case contribution award.[19]

58.    We have no evidence the Lead Plaintiffs: incurred out of pocket expense or typically bill for their time; expected payment in exchange for serving as a representative party; or provided expertise to the case presentation.

59.    Class Counsel estimates no Lead Plaintiff will recover a distribution more than $500.00 because of the Settlement.

60.    The requested $15,000 award will provide at least a 30 multiplier on each Lead Plaintiff's recovery.

61.    We have no basis to award a 30 multiplier on a Lead Plaintiff's recovery.

11

62.    Mary K. Boley provided slightly more of a case contribution than Kandie Sutter or Phyllis Johnson due to her direct involvement with other Class members and involvement as the first named plaintiff on the docket and public filings.

63.    We find the equities as more fully described by Class Counsel during today's hearing warrant a case contribution award of $8,000 to Mary K. Boley and $7,000 each to Kandie Sutter and Phyllis Johnson.

64.    The Settlement Administrator will not pay the attorney's fees, reimbursement of expenses, or case contribution awards until distribution of funds to the Class under the approved Plan of Allocation.

### *We dismiss and close the case with limited continuing jurisdiction.*

65.    The operative Complaint (ECF Doc. No. 18) and all claims asserted therein are dismissed with prejudice and without costs to the Settling Parties and Released Parties other than as provided for in the Settlement Agreement.

66.    With respect to matters concerning the implementation of distributions to Class Members who have an Active Account (after allocation decisions have been made by the Settlement Administrator in its sole discretion), all questions not resolved by the Settlement Agreement shall be resolved by the Plan's Administrator or other fiduciaries of the Plan.

67.    Within twenty-one calendar days following the issuance of all settlement payments to Class Members as provided by the Plan of Allocation approved by the Court, the Settlement Administrator shall prepare and provide to Class Counsel and Defense Counsel a list of each person who received a settlement payment or contribution from the Qualified Settlement Fund and the amount of such payment or contribution.

68.    Class Counsel and the Settlement Administrator shall file a final joint Report confirming distribution compliant with the Settlement Agreement and this Order along with funds returned to the Plan based on uncashed checks no later than **July 28, 2023.**

69.    We retain exclusive jurisdiction until **September 29, 2023** to resolve disputes or challenges arising as to the performance of the Settlement Agreement or any challenges as to the performance, validity, interpretation, administration, enforcement, or enforceability of the Settlement Notice, Plan of Allocation, this Final Approval Order, the Settlement Agreement, or the termination of the Settlement Agreement.

---

[1] The "Settlement Class" is consistent with the definition in the Class Action Settlement Agreement. ECF Doc. No. 110-3 at 8.

[2] 29 U.S.C. § 1001, *et seq. See also* ECF Doc. No. 18. We dismissed Defendant Universal Inc. under Federal Rule of Civil Procedure 41(a)(1)(A)(i) on November 6, 2020. ECF Doc. No. 40.

[3] *See* ECF Doc. Nos. 34, 35, 43.

[4] ECF Doc. Nos. 56, 57.

[5] ECF Doc. No. 87.

[6] ECF Doc. No. 93.

[7] ECF Doc. No. 107.

[8] ECF Doc. No. 110.

[9] ECF Doc. No. 114.

[10] *Id.* at 7–8.

[11] ECF Doc. No. 124 at 3–4.

[12] 821 F.3d 410, 437 (3d Cir. 2016).

[13] *Id.* (quoting *Girsh v. Jepson*, 521 F.2d 153, 156-57 (3d Cir. 1975)).

[14] *In re Prudential Insurance Company America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998).

[15] *Id.* at 333; *In re Gen. Motors Corp*, 55 F.3d 768, 819 (3d Cir. 1995).

[16] *In re Southwest Airlines Voucher Litigation*, 799 F.3d 701, 713 (7th Cir. 2015) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003)).

[17] *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 330 (3d Cir. 2011).

[18] ECF Doc. No. 120–2 ¶ 6.

[19] The United States Court of Appeals for the Second Circuit earlier this month questioned the validity of service awards under Supreme Court precedent, citing an 1881 decision of the Supreme Court. *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, --- F.4th ---, 2023 WL 2506455 (2d Cir. Mar. 15, 2023) (citing *Trustees v. Greenough*, 105 U.S. 527, 537 (1881)). The court of appeals addressed arguments raised by the appellants, objectors to class certification, approval of settlement, and service awards. *Fikes Wholesale, Inc.*, 2023 WL 2506455 at * 8–*9. The objectors argued the Supreme Court's *Greenough* case and a recent decision of the United States Court of Appeals for the Eleventh Circuit, *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020), prohibit service awards. In *Greenough*, the Court held it is "decidedly objectionable" for a cash payment to be "made for the personal services and private expenses" of a creditor who sued on behalf of himself and other similarly situated bondholder. *Fikes Wholesale*, at *8. Although the Supreme Court decided *Greenough* well before Congress amended the Rule of Civil Procedure by adding Rule 23, the Court of Appeals for the Second Circuit indicated it believed service awards are not permissible but concluded "practice and usage seem to have superseded" the Supreme Court's decision in *Greenough* and followed earlier Second Circuit precedent allowing service awards. *Id.* at *9. The court allowed a service award but directed the district court to reduce the award based on the facts of the case. *Id.* at *9–*10.